### UNITED STATES v. INGRAM et al.
#### Civ. A. No. J–704.

United States District Court
E. D. Arkansas, Jonesboro Division.

July 23, 1951.

---

3. The Ninth Circuit is in accord. Alberty Food Products v. United States, 185 F.2d 321.

467

James T. Gooch, U. S. Dist. Atty., and Gerland P. Patten and Robert D. Smith, Asst. U. S. Dist. Attys., Little Rock, Ark., for the plaintiff.

James C. Hale and John Fogleman, of Hale & Fogleman, Marion, Ark., for the defendants.

Murry O. Reed, Little Rock, Ark., appearing specially for State Highway Department of State of Arkansas.

TRIMBLE, Chief Judge.

The defendant, W. K. Ingram, is the duly elected County Judge of Crittenden County, Arkansas. Crittenden County is a county of the State of Arkansas, lying along the west bank of the Mississippi River opposite Memphis, Shelby County, Tennessee. The defendant, Arkansas and Memphis Railway Bridge and Terminal Company is a corporation organized under the laws of the State of Tennessee, is authorized to do business in Arkansas, and is the owner and operator of the railway bridge across the Mississippi River, between Arkansas and Tennessee, which bridge is known as the Harahan Bridge.

The plaintiff, United States of America, acting through its Attorney under the direction of the Attorney General of the United States, has brought this action seeking an injunction to prevent the defendants from dismantling certain portions of the Harahan Bridge, known as the wagon-ways or roadways attached to that bridge, which were provided for by certain Acts of Congress and more particularly described therein.

Defendants Ingram and Crittenden County, in their answer, admit that unless restrained by this Court they will dismantle these roadways so attached to the Harahan Bridge within the State of Arkansas.

It is the contention of the defendants that this is actually a suit involving the State Highway Commission, which has been held to be an agency of the state, and which may not be sued in the Courts of the state under the provisions of the Constitution, Art. 5, Section 20, prohibiting the state from being sued. The action of the County Court complained of was based upon a contract or agreement between the State Highway Commission and Crittenden County. This agreement was, in fact, a finding by the State Highway Commission that these roadways were no longer necessary in the handling of the public traffic, a finding that the expense of maintenance was not justified by the need for such roadways, if any, and a finding, in fact, that the new bridge was adequate, of sufficient capacity, and physically capable of handling all highway traffic which could reach it over the present highways in the State of Arkansas. This makes this, in effect, an action against the State Highway Commission, and, consequently, against the State of Arkansas.

However, Section 1345 of Title 28 U.S.C.A., confers upon the District Courts jurisdiction in all civil actions, suits or proceedings commenced by the United States. The fact that this is an action against the state, therefore, does not deprive this Court of jurisdiction. Utah v. United States, 284 U.S. 534, 52 S.Ct. 232, 76 L.Ed. 469. That this is a suit against the State, see Arkansas State Highway Commission v. Nelson Bros., 191 Ark. 629, 87 S.W.2d 394; the Federal Land Bank of St. Louis v. Arkansas State Highway Commission, 194 Ark. 616, 108 S.W.2d 1077. See also Stamey v. State Highway Commission, D.C., 76 F.Supp. 946.

The Harahan Bridge was constructed under authority of special Acts of Congress, one of which was approved July 20, 1912, 37 Stat. 195, which, after providing for the erection of the railway bridge, provided that the bridge should be so constructed, maintained and operated that in addition to trains and trolley cars, it should provide a separate roadway with approaches and continuous use by the public as a roadway bridge for any and all highway traffic.

This Act was amended by the Act of August 23, 1912, 37 Stat. 359, Section 1 of which contained the same provision as to to the building of the roadway and proaches and continuous use by the public as a highway bridge. Section 3, contained an added provision: That the Bridge Company should have the right to sell, transfer, or lease to any county, city, improvement district, or municipality any of such approaches or of the separate roadways, or both, and in the event of such sale, transfer or lease, the Bridge Company should be relieved of any requirement to maintain the property so sold or leased. Section 4 of the Act retained in Congress the right to amend this Act, but no amendment appears to have been had.

During the construction of the bridge and the separate roadways and approaches some disagreement arose between the Bridge Company, the City of Memphis, Crittenden County, and some private citizens of Memphis (not parties to this action). In settlement of this disagreement, and in order to get the roadways and approaches completed and in operation, the parties entered into a contract for the payment of certain moneys to the Bridge Company. Section 7 of the contract provided: That it was distinctly agreed that upon the completion of the wagon-ways the Bridge Company was to transfer to the County of Crittenden, or to some improvement district which it might designate, that portion of the roadways and approaches thereto located within the State of Arkansas, and that after such transfer the Bridge Company was under no obligation to maintain the wagon-ways and approaches, or the steel work supporting the wagon-ways, but that they would be maintained by the County of Crittenden (no improvement district being designated), and the Bridge Company relieved of any further responsibility therefor. It was further agreed and understood that the County "shall have the right" to repair any portion of the roadways which may break or wear out and to replace such broken or worn out parts by new material.

On August 25, 1917, the Bridge Company executed a conveyance to Crittenden County, Arkansas, of that part of the roadways attached to the Bridge, and lying within the State of Arkansas, reciting that the transfer was in accordance with the above described contract. This conveyance contained the provision, also contained in the contract: "That it shall not only be the right, but likewise the duty of the said Crittenden County, or its assigns, to repair any portion of said wagon-way, herein conveyed, which may break or wear out, and to replace such broken or worn out portions by new parts or material; it being the sole duty of said Crittenden County to take care of and maintain said premises herein conveyed."

Congress was within its right in granting the right to build this bridge to attach this condition to the granting of that right. Congress also had the right, which it exercised here, of making that condition terminable upon the conveyance of the roadways and approaches to the County. The Bridge Company having complied with the condition, that is, built the roadways and approaches and conveyed them to the County, is no longer under obligation to the United States to operate and maintain these roadways and approaches continuously for highway traffic. The complaint states no cause of action against the Bridge Company, and it should be dismissed, as it contemplates no action, and it is not alleged that it does intend to or could take any action with reference to the dismantling of these roadways.

When the Bridge Company, in conformity with the provisions and terms of the amended Act of August 23, 1912, en-

tered into an agreement to convey and later conveyed to the County of Crittenden the roadways and approaches within the State of Arkansas and provided that the County alone would be responsible for the maintenance of the roadways and approaches, including all steel supports thereof, and the Bridge Company would be relieved of this responsibility, it did not, either in terms, expressly, or by any reasonable implication, pass on to the grantee any liability to the United States to keep in continuous operation and repair these roadways and approaches. This liability or responsibility of the Bridge Company to the United States ceased when it conformed strictly to the terms of the Act and conveyed these properties to the County.

It will be noted that the Act did not provide that when the Bridge Company was relieved of the responsibility for maintaining, repairing or operating the roadways and approaches by a conveyance to the County that the responsibility should be assumed by the grantee. It did no more than relieve the Bridge Company of this responsibility, nor does the contract and conveyance to the County cast upon the County any responsibility to the United States for the continuous maintenance, or operation of the roadways. The Bridge Company simply contracted that the Bridge Company would not be responsible for the repairs, and so forth, of the roadways, and the County would be responsible therefor. It did not provide that the County should assume its obligation to the United States. It could not well do so for that obligation ceased when the conveyance was made and there was no obligation for the County to assume.

The plaintiff says that the defendants have not submitted to the Secretary of the Army, and to the Chief of Engineers, and secured their approval of the plans to dismantle these roadways, as, plaintiff contends, is required by the Act of March 23, 1906. The defendants admit they have not submitted their plans to these officials and do not have their approval. It is their contention that they do not have to do so and that this provision of the statute is not applicable in this case.

That Act requires that when a bridge is built or commenced over navigable waters that the plans and certain information shall be presented to the Secretary of the Army and the Chief of Engineers, and their approval be secured before the work may begin. Title 33, U.S.C.A. § 491, provides that when the plans have been so approved it shall not be lawful to deviate from those plans either before or after completion of the structure, unless the deviation has been approved by the officials in like manner as the original plans. Section 495 of this Chapter provides: That "in case of *any litigation arising from any obstruction or alleged obstruction to navigation* created by the construction of any bridge under this chapter," the action may be tried in the District Court of proper venue.

There is no attempt made by the plaintiff to show, in fact, it does not allege that the dismantling of this roadway will affect the navigation of the Mississippi River in any way, shape, form or fashion. Indeed, plaintiff says in its brief: "In passing this statute (Act of July 20, 1912, supra), Congress intended first, that there should be no obstruction to navigation and, secondly, that *a facility or instrumentality of interstate commerce would be provided. It is this instrumentality of interstate commerce that this suit seeks to protect."*

Plaintiff asks the Court to construe the word "deviation" to mean "alteration". As authority for this position, it cites Title 33, U.S.C.A. § 511, under the general heading "Alteration of Bridges." This section, so far as pertinent here, reads: "When used in sections 511–523 of this title, unless the context indicates otherwise—

"The term 'alteration' includes changes of any kind, reconstruction, or removal in whole or in part."

■ Inasmuch as the statute itself limits the application to Sections 511–523, inclusive, it cannot be broadened in scope beyond that limitation. It applies where the Secretary of the Army determines that a bridge is unreasonably obstructing navigation and takes steps to have the obstruction removed.

The Court would not be justified in extending this provision and applying it to the earlier Act where the definition is limited by the express terms of the Act in which it appears. The statute codified as Sections 511–523, supra, is an act implementing the power of the Secretary of the Army to remove bridges which he finds, as a matter of fact, do obstruct navigation.

■ The intent and purpose of the Act of March 23, 1906, is the protection of navigation, as a part of interstate commerce. Congress has a right to determine if it so desires, whether a bridge unreasonably obstructs navigation so as to require its alteration under a statute requiring bridge companies to maintain bridges in a manner that will not unreasonably obstruct free navigation. United States v. Wauna Toll Bridge Co., 9 Cir., 130 F.2d 855, 856.

■ A change in a bridge which does not affect the location or affect the obstructive nature of the bridge does not require the approval of the Secretary of the Army or the Chief of Engineers. In the case of Freeport Texas Co. v. Houston & B. V. R. Co., D.C., 257 F. 213, 218, the Court, in speaking of this requirement of approval of the Secretary of the Army and the Chief of Engineers, said: "It·is a hard doctrine that civil contract rights shall be lost through the failure to submit to the War Department changes in plans when these changes do not affect the location of the structure or its obstructive nature in the stream by enlarging its size or changing its shape * * * I cannot think it reasonable to hold that the Board of Engineers of the War Department act as consulting or supervising architects in matters of bridge construction. Their only purpose and obligation is to pass upon the plans for structures in navigable streams to determine their effect upon streams from the standpoint of navigation, and not in any sense for the purpose of determining their structural or architectural efficiency." This case was affirmed in 268 F. 931, 934, under the style of Midland Bridge Co. v. Houston & B. V. R. Co., and the Circuit Court of Appeals ˙ for the Fifth Circuit there said: "We do not think a mere al-teration in detail, which in no way contemplated any change in the size, nature, or relation to the stream of the completed bridge would have to be approved by the Secretary of War as a condition to an existing contract for construction continuing of force between the parties thereto."

■ The law does not require the submission of the plans to remove these roadways and approval by the Secretary of the Army or Chief of Engineers. The plaintiff alleges that the Harahan Bridge constitutes an interstate connection on the system of Federal Aid Highways, and was improved as .a Federal Aid project and cannot be dropped from the system except by Act of Congress. It alleges that the Bridge has become inadequate to handle the volume of traffic developed since its construction and a new bridge was necessary; that the plans were worked out between the two states involved and the Arkansas & Memphis Bridge Commission, created by Act of Congress. That it was necessary to revise the system of Federal Aid Highways to include the site selected for the construction of the new bridge, that this revision was made and approved on the part of the Federal Government, "retaining the Harahan Bridge on the system *for use until the new bridge was completed.*" It alleges that the "project" is not completed, *although the new bridge structure has been opened for traffic.* It also alleges that the Harahan Bridge cannot be eliminated from the system of Federal Aid Highways until and after the new bridge project is completed.

It is the contention of the defendants that the Harahan roadways and approaches have already been eliminated from the system of Federal Aid Highways, but deny that it is an issue herein, and, if it should be determined that the roadways were still a part of the system, it would confer no right upon the plaintiff which is or could be the basis for this action.

There was introduced in evidence a route report on the location of the new bridge, made in 1944 by the Senior Highway Design Engineer of the Bureau of Public Roads, in which he stated: "The only alternate route is the present traveled

route over the Harahan Bridge. This route over the Harahan Bridge will be retained as a temporary spur until the new bridge is completed and in use. It will then be dropped from the Federal Aid System."

The plaintiff introduced in evidence, over the objection of the defendants, a letter from the Secretary of Commerce, of which the Bureau of Public Roads is an agency, to the Attorney General of the United States. This letter is undated but shows to have been received by the office of the Attorney General on June 6, 1951. In this letter the Secretary makes the same statements embodied in the complaint as to the necessity of a new bridge, the necessity of revising the Federal Aid System to include the site selected for the new bridge, "and this revision was requested by the States and *approved on the part of the Federal Government,* retaining the Harahan Bridge on the system for use *until the new bridge was completed and in operation * * *."*

The undisputed proof in this case is that the *new bridge* has been completed, is in use and has been in full use for more than eighteen months and the old Harahan Roadways have been dropped from the Federal Aid Highway System.

 Therefore, if it is material, competent or pertinent and a proper subject of inquiry here, the Court finds from the allegations of plaintiff's complaint and all the evidence that the roadways and approaches on the Harahan Bridge had been eliminated from the Federal Aid System of Highways long before the commencement of this action.

Plaintiff alleges as one ground for its action that "The Secretary of Commerce has determined that the bridge shall be retained as a part of the Federal Aid Highways without any disruption or dismantling of the lanes for highway traffic * * *. That the dismantling of the highway portion of the bridge by the defendants would constitute an interference with interstate commerce."

As a basis for this allegation, plaintiff relies on the letter written by the Secretary of Commerce, delivered June 6, 1951, hereinbefore referred to. Plaintiff is pleased to call this a finding, and contends that it being a finding it cannot be inquired into as to how or why the Secretary arrived at his conclusions and made his determination.

 The finding of the Secretary, if he has made one, that the United States government should take over the property of the defendant County, is a judicial finding, in at least a quasi-judicial proceeding. "The right to notice and hearing is imperative in judicial or quasi judicial proceedings. It is not important that in this instance a hearing is not expressly enjoined by the statute. The right is constitutional, and the deprivation of the citizen of his property without notice and an opportunity to be heard amounts to the taking of his property without due process of law." Clarksburg-Columbus Short Route Bridge Co. v. Woodring, Secretary of War, 67 App.D.C. 44, 89 F.2d 788, 790. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 908, 80 L.Ed. 1288.

 Furthermore, this letter does not rise to the point of being a finding, but is merely an expression of opinion, founded in part at least upon the opinion of somebody else. Granting it all the probative force that can be accorded it, it falls far short of being an authoritative finding binding upon the Court to which the Court must give affirmation. No giving of notice is recited or proved, no hearing was had, no opportunity to be present and heard was given the defendant County or the defendant County Judge.

While plaintiff alleges the power of Congress over interstate commerce and its power to regulate commerce between the states, it has not pointed out to the Court, nor has it shown in its brief, and indeed it has not pleaded, any Act of Congress applicable here. It cites several cases, under special acts and affecting navigation, but none of them have any bearing on this case. In United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243, the question of navigation under the Several Acts of Congress and the Federal Power Act of 1920, 41 Stat. 1063, as

amended in 1935, 16 U.S.C.A. § 791a et seq., was involved. Another case cited and relied on is that of United States v. City & County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 751, 84 L.Ed. 1050. The first paragraph of the Court's opinion eliminates that case from any application here: It is as follows: "By the Raker Act of December 19, 1913 [38 Stat. 242 et seq.], Congress granted the City and County of San Francisco, *subject to express conditions,* certain lands and rights-of-way in the public domain in Yosemite National Park".

The plaintiff in that case, the United States, alleged a violation of the express conditions on which the grant was made.

The grant of the right to construct the bridge in this case was a grant subject to express conditions and which express conditions have been fully met and are no longer of any force. Plaintiff has not pointed out to the Court any other Act of Congress applicable here.

 Plaintiff denies that the County Court had jurisdiction over this bridge, and, therefore, they contend could enter no judgment affecting the bridge. The general statutes of Arkansas on the subject of bridges confers jurisdiction over the erection of bridges upon the County Court and specifically includes bridges spanning navigable streams on county lines. Section 76–1501, Arkansas Statutes, 1947.

 Defendants contend that denominating the County Judge as administrative officer is no more than an attempt to evade the defense of this being a collateral attack upon a judgment of a court of superior jurisdiction. The County Judge can only contract, or perform a contract for and on behalf of the County, when acting in the capacity of a court. Lyons Machinery Co. v. Pike County, 192 Ark. 531, 93 S.W.2d 130, 131:

"No authority or power is conferred upon county judges by the Constitution or by statute to make contracts on behalf of the county. With certain limitations, such authority or power is conferred by the Constitution and statutes upon county courts. Article 7, § 28, Const. 1874; * * * Reb-

samen, Brown & Co. v. Van Buren County, 177 Ark. 268, 68 S.W.2d 288."

"But it is equally well established that a County Judge, acting merely as a county official, has no power in Arkansas to make contracts binding upon the county; to make such contracts binding it is necessary that they be approved by the County Court. (citing Lyons Machinery Co. v. Pike County, supra.) The Constitution requires that county contracts be made by the County Judge acting in his judicial capacity." Citing Rebsamen, Brown & Co. v. Van Buren County, supra.

Watt & Sanders v. Myatt, County Treasurer, 216 Ark. 660, 662, 226 S.W.2d 800, 801, is to the same effect.

Calling the County Judge an administrative officer does not change his official position under the Constitution and laws of the state, alter his position or confer any other or different character or authority upon him. If any action of his is to be effective, it must be as a County Court.

 On the trial of the case, the plaintiff sought to prove that the judgment of the County Court was void for failure to give notice to it of the entry of the proposed order or judgment. It is well settled in the State of Arkansas, and the statutes so provide, that a judgment against a party entered without notice is void. Townsley-Mayrick Dry Goods Co. v. Fuller, 58 Ark. 181, 24 S.W. 108. But a condition precedent is that the party complaining of lack of notice must have some right or interest in the subject matter of the action or the res. Furthermore, there is a presumption of the regularity of the judgment of a court acting within the scope of its jurisdiction. Sovereign Camp W. O. W. v. Wilson, 136 Ark. 546, 207 S.W. 45, 46. The holding of the Courts is that such judgments are not absolutely void but voidable. In Sovereign Camp W. O. W. v. Wilson, supra, the Supreme Court said: "Our statute provides that all judgments rendered without notice shall be absolutely void, but there is a presumption of regularity attending a judgment of superior courts of general jurisdiction, which cannot be controverted except by

showing that there was in fact no notice, and that there existed a meritorious defense to the action which could have been asserted if notice had been given." State v. Hill, 50 Ark. 458, 8 S.W. 401; Quigley v. Hammond, 104 Ark. 449, 148 S.W.2d 275.

In the early case of Boyd v. Roane, 49 Ark. 397, 5 S.W. 704, decided at the May Term of the Court, 1887, it was held that: "Since the enactment of the statute declaring all judgments pronounced by any of the courts of this State against any one, without notice, absolutely void, the doctrine laid down in Bordon v. State, 11 Ark. 519, that the judgment of a superior court, rendered without notice, is not void but only voidable, has been adhered to so often that it has become, in its application * * * a rule of property not to be disturbed by the courts."

This applies to judgments of county courts. Brown v. Arkebauer, 182 Ark. 354, 31 S.W.2d 530. The Court said: "On a trial of the case the court refused to permit the introduction of testimony offered on the part of the appellant tending to show the condition of the fence around the berry patch, for the reason that that territory was included in a fencing district created by order of the county court, in which order the running at large of cattle was prohibited. This ruling of the court is assigned as error, the contention being that the county court was without authority to make the order. The attack made upon the validity of the order is a collateral one, and therefore, as the court had jurisdiction of the subject-matter, every presumption will be indulged in favor of the validity of the judgment. Hooper v. Wist, 138 Ark. 289, 211 S.W. 143. The court did not err in its ruling."

Plaintiff also alleges and argues that these roadways and approaches are necessary for a stand-by highway, for use in case of emergency and in the national defense program. If the United States government has need of this "instrumentality of interstate commerce", in either the national defense program, or its general military program, or for any other legitimate purpose, it has the power under the Constitution of the United States of eminent domain, and it can bring condemnation proceedings for taking these roadways and approaches. But it cannot take the property of the public, county, state or municipality, without paying just compensation therefor.

There is no proof the United States will suffer any injury, irreparable or otherwise, by the dismantling of the roadways. They are the property of Crittenden County. The plaintiff has no right, title or justiciable interest, or right of possession to this property and can acquire none by injunction.

For the several reasons stated herein, the plaintiff is not entitled to the relief prayed, and the complaint must be dismissed for want of equity.