**UNITED STATES of America, Appellant,**

v.

**STATE OF CALIFORNIA, Appellee.**

**No. 18246.**

United States Court of Appeals Ninth Circuit.

Feb. 28, 1964.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, and Hugh Nugent, Attys., Dept. of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., and James R. Akers, Jr., Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Stanley Mosk, Atty. Gen. for State of California, Los Angeles, Cal., and George C. Hadley, Richard L. Franck, Charles E. Spencer, Jr., Morse A. Taylor and Robert E. Reed, Los Angeles, Cal., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and MacBRIDE, District Judge.

BROWNING, Circuit Judge.

The United States sued the State of California in the District Court to recover losses resulting from allegedly negligent acts of State employees in starting a fire in a national forest, and in attempting to extinguish it. The complaint was filed under 28 U.S.C.A. § 1345, which grants to district courts original juris-

diction over "all" civil actions commenced by the United States.[1]

The District Court dismissed the action on the ground that Section 1345 "does not confer upon a Federal district court jurisdiction over a State in a civil action brought by the United States to recover from the State damages resulting from negligence of State agents, absent a waiver of the State's sovereign immunity."[2]

I

The District Court read this exception into the language of Section 1345 in part because the court entertained "serious Constitutional doubts" as to the power of Congress to extend the jurisdiction of district courts to suits by the United States against a State without the State's specific consent unless a federal question is presented.[3]

It is not clear whether the asserted lack of power pertains to all federal courts or only to those inferior to the Supreme Court. Nor is it clear whether an issue of federal supremacy is thought essential, or whether any kind of federal question will suffice.[4] Neither is it evident why a suit by the United States to collect damages from the State for injury to the national forests does not meet any subject-matter limitation which may be thought to exist.[5]

It is unnecessary to consider these problems, however, for we are satisfied that the Constitution grants original jurisdiction to the Supreme Court over civil suits brought by the United States against a State without specific consent regardless of the nature of the controversy, provided the issue is justiciable, and that the Constitution empowers Congress to confer upon the district courts concurrent jurisdiction over such suits.

A. *The Supreme Court*

Article III,[6] Section 2, Clause 1 of the Constitution extends the federal judicial

---

1. 28 U.S.C.A. § 1345 provides:
 "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.
 Concededly, in the present instance no Act of Congress "otherwise provided."

2. United States v. California, 208 F.Supp. 861, 867 (S.D.Cal.1962).

3. Ibid.

4. The District Court apparently felt an issue of the latter kind was required, but that this constitutional, limitation applied only to inferior federal courts. 208 F. Supp. at 864–65. We have ourselves suggested that an issue of "paramount federal right" might be prerequisite to exercise of federal judicial power against a State without its consent, but have rejected the notion that such a requirement, if it existed, would apply only to the lower federal courts. United States v. Arizona, 214 F.2d 389, 394 (9th Cir. 1954). See also Colorado v. United States, 219 F.2d 474, 476–77 (10th Cir. 1954).

5. Compare Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917), with Cotton v. United States, 52 U.S. (11 How.) 229, 13

L.Ed. 675 (1850). Cf. United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947).

6. The portions of Art. III pertinent to this appeal read as follows:
 "Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. * * *
 "Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.
 "In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall

power "to Controversies to which the United States shall be a Party."

■ Clause 2 vests the Supreme Court with original jurisdiction over "all Cases * * * in which a State shall be a Party." Since the latter grant does not exclude cases in which the United States is the opposite party, the Supreme Court has original jurisdiction over suits by the United States against a State. Each State impliedly consented to such suits "when admitted into the Union upon an equal footing in all respects with the other States," and no further consent is needed. United States v. Texas, 143 U.S. 621, 646, 12 S.Ct. 488, 494, 36 L.Ed. 285 (1892).[7] Accordingly, the Supreme Court has repeatedly entertained suits by the United States against a State, without the State's consent.[8]

■ Moreover, the jurisdiction of the Supreme Court extends to suits by the United States against a State "without regard to the subject of such controversies" (United States v. Texas, 143 U.S. at 646, 12 S.Ct. at 494, 36 L.Ed. 285) for "it is apparent upon the face of these clauses that in one class of cases the jurisdiction of the courts of the Union depends 'on the character of the cause, whoever may be the parties,'[9] and, in the other, on the character of the parties, whatever may be the subject of controversy." 143 U.S. at 643, 12 S.Ct. at 492, 36 L.Ed.2d 285. There is no suggestion in any of the opinions in cases brought by the United States against a State in the Supreme Court that the subject matter of the controversy was relevant to the Court's jurisdiction.

The policy considerations underlying Supreme Court jurisdiction over such suits precludes the imposition of a subject-matter limitation. The jurisdiction exists because if it did not the United States would be forced to resort to the courts of the State which was resisting the federal claim (if, indeed, that State would permit suit against it in its own courts), or no means at all would be available for finally resolving the dispute short of an ultimate test of physical strength;[10] and neither of these alternatives is compatible with our constitutional scheme. The problem is the same whatever the nature of the controversy between the two governments. It therefore calls for the same solution without regard to the kind of question presented, provided the subject matter be justiciable and hence appropriate for judicial resolution.[11]

have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make."

7. See also United States v. Louisiana, 339 U.S. 699, 701-02, 70 S.Ct. 914, 94 L.Ed. 1216 (1950); Wright on Federal Courts 437 n. 24 (1963). Cf. Monaco v. Mississippi, 292 U.S. 313, 329, 54 S.Ct. 745, 78 L.Ed. 1282 (1934).

8. See, e.g., United States v. Texas, 339 U.S. 707, 70 S.Ct. 918, 94 L.Ed. 1221 (1950); United States v. Louisiana, 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216 (1950); United States v. California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); United States v. Wyoming, 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590 (1947); United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941); United States v. Oregon, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267 (1935); United States v. Arizona, 295 U.S. 174, 55 S.Ct. 666, 79 L.Ed. 1371 (1935); United States v. West Virginia, 295 U.S. 463, 470, 55 S.Ct. 789, 79 L.Ed. 1546 (1934); United States v. Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931); United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539 (1926); United States v. Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638 (1923); United States v. Michigan, 190 U.S. 379, 23 S.Ct. 742, 47 L.Ed. 1103 (1903); United States v. Texas, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892); United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336 (1890). See also 11 Stan.L.Rev. 665, 701-04 (1959).

9. Quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 378, 393, 5 L.Ed. 257 (1821).

10. United States v. Texas, 143 U.S. 621, 641, 12 S.Ct. 488, 36 L.Ed. 285 (1892); Wright, supra note 7, at 437.

11. See e.g., Stern & Gressman, Supreme Court Practice 303 (3d ed. 1962); 11 Stan.L.Rev. 665, 696-98 (1959).

## B. *Lower courts*

As a result of Convention compromise the Constitution vested in Congress discretion to establish such lower federal courts as it might think proper;[12] "and it seems to be a necessary inference from the express decision that the creation of inferior federal courts was to rest in the discretion of Congress that the scope of their jurisdiction, once created, was also to be discretionary." Hart & Wechsler, The Federal Courts and the Federal System 18 (1953).[13]

■■ The power of Congress to confer jurisdiction upon lower courts is not limited by the constitutional grant of original jurisdiction over certain cases to the Supreme Court.[14] "The true rule in this case is * * * [that] the grant of jurisdiction over a certain subject-matter to one court, does not, of itself, imply that that jurisdiction is to be exclusive." Gittings v. Crawford, 10 Fed.Cas. 447, 450 (No. 5465) (C.C.D. Md.1838).[15] That this was in fact the intention of the framers appears from changes made in article III in the course of the Convention.[16]

Accordingly, the Supreme Court held in Börs v. Preston, 111 U.S. 252, 4 S.Ct. 407, 28 L.Ed. 419 (1884), that Congress may grant jurisdiction to lower courts over suits against aliens, including consuls, despite the provision of article III that "In all Cases affecting * * * Consuls * * * the supreme Court shall have original Jurisdiction." And at the same term the Court in Ames v. Kansas, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884), concluded that the grant of original jurisdiction to the Supreme Court over cases "in which a State shall be a Party," does not preclude Congress from vesting concurrent jurisdiction over such actions in lower courts.[17] Since

12. U.S.Const., art. III, § 1, supra note 6. See Hart & Wechsler, The Federal Courts and the Federal System 17–18 (1953).

13. Other circumstances drawn from the records of the Convention confirm the inference. Hart & Wechsler, supra note 12, at 18; 38 N.Y.U.L.Rev. 405, 408 (1963).

14. U.S.Const. art. III, § 2, cl. 2. See Wright, supra note 7, at 437 n. 23; Stern & Gressman, supra note 11, at 303–04; 1 Moore's Federal Practice 258 (1961) and 4 Moore's 46 (1951).

15. Chief Justice Taney on circuit, quoted in Börs v. Preston, 111 U.S. 252, 260, 4 S.Ct. 407, 28 L.Ed. 419 (1884).

16. The original draft of what is now § 2 of art. III began, "The jurisdiction of the Supreme Court shall extend" etc., in place of the present language, "The judicial power shall extend" etc. See note 6. The draft also contained an express provision that the Congress might assign (with an exception not pertinent here) jurisdiction over "any part" of the enumerated classes of cases to the lower federal courts. The assignment clause was deleted as unnecessary when the opening language was changed to the present form. Nonetheless it constitutes a direct verbalization of the intention of the framers that "any part" of the judicial power of the United States, including also that within the original jurisdiction of the Supreme Court, might be assigned by Congress to the lower federal courts. 2 Farrand, Records of the Federal Convention 172–73, 186–87, 425, 431 (1911); Prescott, Drafting the Federal Constitution 675 (1941).

17. In Ames v. Kansas, 111 U.S. 449, 469, 4 S.Ct. 437, 447, 28 L.Ed. 482 (1884), the Court said:

"In view of the practical construction put on this provision of the Constitution by Congress at the very moment of the organization of the government, and of the significant fact that from 1789 until now no court of the United States has ever in its actual adjudications determined to the contrary, we are unable to say that it is not within the power of Congress to grant to the inferior courts of the United States jurisdiction in cases where the Supreme Court has been vested by the Constitution with original jurisdiction. It rests with the legislative department of the government to say to what extent such grants shall be made, and it may safely be assumed that nothing will ever be done to encroach upon the high privileges of those for whose protection the constitutional provision was intended. At any rate, we are unwilling to say that the power to make the grant does not exist."

See also United States v. Louisiana, 123 U.S. 32, 36, 8 S.Ct. 17, 31 L.Ed. 69 (1887):

"In a recent case, (Ames v. Kansas, 111 U.S. 449, 4 S.Ct. 437 [28 L.Ed. 482]),

Ames v. Kansas, statutes granting jurisdiction to lower courts over suits by the United States under particular legislation have been repeatedly construed as including suits against a State and, as so interpreted, have been uniformly upheld.[18]

There is nothing to indicate that the power of Congress in this regard is limited by the subject matter of the controversy.

Since the character of the parties is a basis of federal judicial power distinct and independent from that of the nature of the controversy,[19] there is no logical reason why Congress may not treat these two heads of jurisdiction separately in distributing the judicial power to lower courts. And Congress has in fact done so from the beginning. Section 9 of the Judiciary Act of 1789, for example, granted district courts jurisdiction based solely upon the nature of the cause ("all civil causes of admiralty and maritime jurisdiction"), upon both the nature of the cause and the character of the parties ("all causes where an alien sues for a tort only in violation of the law of nations or a treaty of the United States"), and solely upon the character of the parties ("all suits at common law where the United States sue").[20]

■ The relevant court decisions support the view, evidently entertained by Congress, that congressional power to confer jurisdiction upon lower courts based upon the character of the parties is not limited by the subject matter of the controversy.

The subject matter of Börs v. Preston, supra, 111 U.S. 252, 4 S.Ct. 407, 28 L.Ed. 419, was the tortious conversion of personal property, and among the decisions relied upon by the Court was an action against a counsel to collect a promissory note.[21] In Ames v. Kansas, supra, 111

this question was very fully examined, and the conclusion reached that the original jurisdiction of the Supreme Court, in cases where a State is a party, is not made exclusive by the Constitution, and that it is competent for Congress to authorize suits by a State to be brought in the inferior courts of the United States."

In United States v. Texas, 143 U.S. 621, 643, 12 S.Ct. 488, 36 L.Ed. 285 (1892), the Court noted that the circuit courts did not then have jurisdiction over such suits, not because of a want of congressional power to confer it, but because of a lack of legislation doing so. Cf. Plaquemines Tropical Fruit Co. v. Henderson, 170 U.S. 511, 18 S.Ct. 685, 42 L.Ed. 1126 (1898). See Hart & Wechsler, supra note 12, at 218–19.

18. Case v. Bowles, 327 U.S. 92, 97, 66 S.Ct. 438, 90 L.Ed. 552 (1946); United States v. California, 297 U.S. 175, 187, 56 S.Ct. 421, 80 L.Ed. 567 (1936); United States v. Washington, 233 F.2d 811, 813 (9th Cir. 1956); Colorado v. United States, 219 F.2d 474, 476–77 (10th Cir. 1954); Minnesota v. United States, 125 F.2d 636, 639 (8th Cir. 1942); California v. United States, 91 F.Supp. 722 (N.D. Cal.1950). See also City of Newark v. United States, 254 F.2d 93, 96–98 (3d Cir. 1958). The same holding is implicit in United States v. Alabama, 362 U.S. 602, 604, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960); Alabama v. United States,

304 F.2d 583, 584 n. 3 (5th Cir. 1962); Utah v. United States, 304 F.2d 23 (10th Cir. 1962); Utah State Bd. for Vocational Educ. v. United States, 287 F.2d 713 (10th Cir. 1961); United States v. Montana, 134 F.2d 194 (9th Cir. 1943); United States v. Wyoming, 195 F.Supp. 692 (D.Wyo.1961); Bush v. Orleans Parish School Bd., 188 F.Supp. 916 (E.D. La.1960) aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806 (1961); United States v. California, 143 F.Supp. 957 (N.D.Cal. 1956); and United States v. Minnesota, 113 F.Supp. 488 (D.Minn.1953).

19. See text related to note 9.

20. Ch. 20, 1 Stat. 77.

21. Justice Taney's decision on circuit in Gittings v. Crawford, 10 Fed.Cas. 447 (No. 5465) (C.C.D.Md.1838).

It is argued that these authorities are inapplicable, for a State, unlike a consul or other individual, is clothed with sovereign immunity and may not be sued without consent. Of course it would beg the question simply to assert that sovereign immunity bars district court jurisdiction of suits by the United States against a State unless a particular kind of issue is presented; if the Constitution authorizes Congress to vest jurisdiction in the district courts over suits by the United States against a State without regard to subject matter, consent by the State is implied. See Note 7, and related

·U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482, the Court relied primarily upon these and other authorities upholding lower court jurisdiction over suits against consuls without regard to subject matter,[22] and there is nothing in Ames v. Kansas, or in the opinions in cases which have followed it,[23] suggesting that the power of Congress to grant jurisdiction to lower courts over suits against States, unlike suits against consuls, is limited by the nature of the controversy. In context, the unqualified assertion by Chief Justice Waite in Ames v. Kansas that it is "within the power of Congress to grant to the inferior courts of the United States jurisdiction in cases where the Supreme Court has been vested by the Constitution with original jurisdiction" (111 U.S. at 469, 4 S.Ct. at 447, 28 L.Ed. 482), cannot be discounted as unintentionally broad.[24]

The fact that there is no subject-matter limitation upon the original jurisdiction of the Supreme Court over suits by the United States against a State argues strongly against a subject-matter limitation upon lower court jurisdiction over such suits. If a subject-matter limitation were applicable only to lower courts, States could be sued in district courts when questions of constitutional power and overriding federal interest were at stake, but could be sued only in the Supreme Court when disputes concerned nonfederal issues, of relatively minor consequence in the federal constitutional scheme.[25]

Aside from the incongruity of this result, it would lead to one or another of two unfortunate consequences. Either the Supreme Court would be compelled to divert time and energy from the resolution of federal constitutional and statutory problems which are properly its primary concern; or it would be compelled to refuse to entertain all but the most significant of the nonfederal-question cases brought by the United States against a State,[26] thus depriving the United States of access to any federal forum in many suits of this kind.

A construction of article III which recognizes power in Congress to vest

text. See also City of Newark v. United States, 254 F.2d 93, 96 (3d Cir. 1958). And, as the opinion in Ames v. Kansas, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884), demonstrates, in holding that Congress may grant jurisdiction to lower courts over suits within the original jurisdiction of the Supreme Court, the Court perceived no distinction between States on the one hand and "Ambassadors, other public Ministers and Consuls" on the other.

22. In addition to Börs v. Preston (cited in Ames at 111 U.S. 469, 4 S.Ct. at 446, 28 L.Ed. 482), the Court relied upon Davis v. Packard, 32 U.S. (7 Pet.) 276, 8 L.Ed. 684 (1833), holding that a State court did not have jurisdiction of an action of debt against a consul, jurisdiction exclusive of State courts having been vested by Congress in the federal district courts (111 U.S. at 467–68, 4 S.Ct. at 445, 446, 28 L.Ed. 482) ; Gittings v. Crawford, 10 Fed.Cas. 447 (No. 5465) (C.C.D.Md. 1838), an action in a circuit court against a consul on a promissory note (111 U.S. at 468, 4 S.Ct. at 446, 28 L.Ed. 482) ; St. Luke's Hospital v. Barclay, 21 Fed. Cas. 212 (No. 12241) (C.C.D.N.Y.1855), an action in a circuit court against consuls to restrain distribution of a fund (111 U.S. at 468, 4 S.Ct. at 446, 28 L.Ed. 482) ; and Graham v. Stucken, 10 Fed. Cas. 945 (No. 5677) (C.C.D.N.Y.1857), a suit in a circuit court against a consul to set aside a sale of a vessel as void for usury (111 U.S. at 468, 4 S.Ct. at 446, 28 L.Ed. 482).

23. Excepting only the intimation in the language of Colorado v. United States, 219 F.2d 474, 476–77 (10th Cir. 1954). See note 18.

24. Particularly in view of the discussion by Chief Justice Waite, immediately following the quoted language, regarding the independence, as bases of federal jurisdiction, of the nature of the controversy and the character of the parties. 111 U.S. at 469–72, 4 S.Ct. at 446–448, 28 L.Ed. 482.

25. Note, 17 Rutgers L.Rev. 620, 626–27 (1962–1963).

26. Cf. 1 Moore's Federal Practice 258 n. 7 (1961); Stern & Gressman, supra note 11, at 306; 11 Stan.L.Rev. 665, 694–700 (1959) ; Wagner, The Original and Exclusive Jurisdiction of the United States Supreme Court, 2 St.Louis L.Rev. 111, 142 (1952).

jurisdiction in lower courts over suits against a State without regard to the nature of the controversy does not deprive the constitutional grant of original jurisdiction to the Supreme Court "of any effective meaning," as the District Court suggested.[27] That jurisdiction remains, to be invoked in those controversies which are of sufficient consequence to justify the attention of the highest tribunal. Congress is left free, however, to vest concurrent jurisdiction in lower courts so that disputes of lesser importance, and those which may be determined more effectively in trial courts, may be litigated there.[28]

## II

The question remains whether Congress in enacting 28 U.S.C.A. § 1345 [29] exercised its power to vest such jurisdiction in district courts.

An understanding of the problem requires a brief review of the history of Section 1345 and a related provision of the Judicial Code, Section 1251(b) (2).[30]

Section 1345 had its origin in the provision of Section 11 of the Judiciary Act of 1789 granting federal circuit courts "original cognizance * * * of all suits of a civil nature * * * where * * * the United States are plaintiffs." [31] The subject matter of Section 1251 was first treated in the provision of Section 13 of the Act granting the Supreme Court "exclusive jurisdiction of all controversies * * * where a state is a party." [32] In view of this stipulation in Section 13, suits by the United States against a State were excluded by implication from Section 11's general grant to lower courts of jurisdiction over suits by the United States.

These provisions of Sections 11 and 13 of the Judiciary Act of 1789 remained a part of federal law essentially unchanged, until the revision of the Judicial Code in 1948.[33] However, various statutes enacted during the intervening years, which conferred jurisdiction on district courts over certain suits brought by the United States, were interpreted as permitting suit in such cases against a State, and as modifying to that extent the section 13 grant to the Supreme Court of exclusive jurisdiction over all suits against States.[34]

In the 1948 Revision of the Judicial Code, the Section 11 grant of district court jurisdiction over suits brought by the United States was re-enacted as Section 1345, with the addition of an introductory phrase, "Except as otherwise provided by Act of Congress." The Section 13 grant of exclusive Supreme Court jurisdiction over suits to which a State

27. 208 F.Supp. at 866.

28. Cf. United States v. California, 297 U.S. 175, 188, 56 S.Ct. 421, 80 L.Ed. 567 (1936); Börs v. Preston, 111 U.S. 252, 260, 4 S.Ct. 407, 28 L.Ed. 419 (1884), quoting with approval Gittings v. Crawford, 10 Fed.Cas. 447, 451 (No. 5465) (C.C.D.Md.1838).

29. See note 1.

30. 28 U.S.C.A. § 1251(b) (2) reads:
"The Supreme Court shall have original but not exclusive jurisdiction of * * * all controversies between the United States and a State."

31. Ch. 20, 1 Stat. 78.

32. Ch. 20, 1 Stat. 80.

33. Section 11 as §§ 563 and 629 of the Revised Statutes (1875), § 24, and ¶ 1 of the Judicial Code of 1911, ch. 231, 36 Stat. 1091 (28 U.S.C. § 41(1)). Section 13

as § 687 of the Revised Statutes (1875), and § 233 of the Judicial Code of 1911, ch. 231, 36 Stat. 1156 (28 U.S.C. § 341 (1940)).

34. See, e. g., Case v. Bowles, 327 U.S. 92, 97, 66 S.Ct. 438, 90 L.Ed. 552 (1946) (§ 205(c) of the Emergency Price Control Act, ch. 26, 56 Stat. 33 (1943) as amended ch. 325, 58 Stat. 640 (1946)); United States v. California, 297 U.S. 175, 187–88, 56 S.Ct. 421, 80 L.Ed. 567 (1936) (§ 6 of the Safety Appliance Act, 27 Stat. 531 (1893) as amended, ch. 87, 29 Stat. 85 (1896)); United States v. Montana, 134 F.2d 194, 196 (9th Cir. 1943) (§ 203(a) of the National Recovery Act, ch. 90, 48 Stat. 202 (1933); Minnesota v. United States, 125 F.2d 636, 639 (8th Cir. 1942) (25 Stat. 357 (1911), 40 U.S. C.A. § 257). See also United States v. Carbon County Land Co., 46 F.2d 980, 987 (10th Cir. 1931).

was a party was replaced by Section 1251(b) (2), which provided that the Supreme Court should have "original but not exclusive jurisdiction of * * * controversies between the United States and a State."

By abrogating the prior grant of exclusive jurisdiction to the Supreme Court, Section 1251(b) (2) removed the bar which had prevented district courts from entertaining suits by the United States against a State under the jurisdictional grant now embodied in Section 1345. After the adoption of Section 1251(b) (2), Section 1345 granted jurisdiction over all such suits to district courts, for no other Act of Congress then "otherwise provided."

 Our inquiry might end here, for as Professor James Wm. Moore, special consultant to the revisers, has said, the 1948 Revision embodies "a large number of changes, many of considerable importance. The Code should be construed with this in mind and where plain language works a change in the former law this change should be given effect * *." Moore's Commentary on the United States Judicial Code 83 (1949).[35]

In any event, the Reviser's Notes also demonstrate "that by enacting section 1251(b) (2), Congress sought to remove the need for further legislation conferring jurisdiction upon the district courts in cases where the United States brings an action against a state." 38 N.Y.U.L. Rev. 405, 410 (1963).[36]

The revisers were well aware that district courts generally lacked jurisdiction of suits by the United States against a State because of the general statutory grant of exclusive jurisdiction over such cases to the Supreme Court, and that special Acts had been adopted from time to time to overcome this impediment to district court jurisdiction in particular cases. The state of the law was fully discussed in opinions cited in the Reviser's Note to Section 1251.[37] As Professor Moore stated, "while former 28 U.S.C. § 341 (1940) [38] gave the Supreme Court exclusive jurisdiction of an action by the United States against a state, there were other and more recent statutes that qualified this grant so that the United States could sue a state in a district court in certain cases. Section 1251(b) (2) gives general recognition to this principle by providing that the Court shall have original, but not exclusive jurisdiction of all actions between the United States and a state." Moore's Commentary on the United States Judicial Code 621 (1949).[39] That this was the intended effect of the change finds

---

35. See also Ex Parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949); Moore's Commentary, p. 78.

36. See also Wagner, supra note 26, at 117.

37. United States v. California, 297 U.S. 175, 187–88, 56 S.Ct. 421, 80 L.Ed. 567 (1936); and United States v. 4,450.72 Acres of Land, 27 F.Supp. 167, 176 (D. Minn. 1939), aff'd 125 F.2d 636, 639 (8th Cir. 1942).

38. See note 33.

39. See also Moore's Commentary at 626–27: "Section 1251(b) (2) states that the Court shall have original, but not exclusive, jurisdiction of 'All controversies between the United States and a State', and gives general recognition to a principle that had developed, prior to the Code, for limited situations. The United

States is, however, immune from suit by a state in the absence of consent, and nothing in Article III nor in § 1251(b) (2) changes that principle. On the other hand, by becoming a member of the Union each state waived its immunity to suit by the United States. The claim of the latter must, of course, be justiciable." (footnotes omitted.)

The suggestion in Hart & Wechsler, supra note 12, at 228, that the revisers may have changed the law "without knowing what they were doing," is thus scarcely credible. Even if evidence that the change was deliberate were not available, the notable knowledgeability of the revisers and consultants, and the care with which the work was done (Ex Parte Collett, 337 U.S. 55, 65–71, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1949)) would render the suggestion highly improbable. Chief Justice Stone and Associate Justices Frankfurter and Douglas advised the re-

further support in the Reviser's Note to Section 1345 which states explicitly that the phrase, "Except as otherwise provided by Act of Congress" was inserted in that section "to make clear that jurisdiction [over suits brought by the United States] exists generally in district courts in the absence of special provisions conferring it elsewhere."

Since the 1948 revision the courts have held repeatedly that Section 1345 vests jurisdiction in district courts over suits by the United States against a State.[40] Commentators have uniformly reached the same conclusion.[41] The contrary decision of the court below stands alone.

The principal argument advanced for the exclusion of suits against a State from the reach of Section 1345 (other than the constitutional doubts with which we have already dealt) is that since prior statutory embodiments of the rule stated in Section 1345 were not effective to confer jurisdiction upon district courts over suits against a State, and since the language is essentially unchanged, it should be interpreted as before. But suits against a State were not excluded from the coverage of the pre-1948 counterparts of Section 1345 because the statutory

language failed to include them; on the contrary, the language was and is amply broad. Suits against a State were excluded solely because the predecessors of Section 1251(b) (2) had vested exclusive jurisdiction over such suits in the Supreme Court. Removal of this bar by Section 1251(b) (2) eliminated the basis for the exception which had been implied in the clear language of the predecessors to Section 1345. This change, as we have seen, was a product of deliberate choice. It should be given effect.[42]

It is also argued that surrender of sovereign immunity is not to be lightly implied, and, since Section 1345 does not specifically mention States as parties defendant, an intent to permit suit against them in district courts should not be implied, at least where the claim is merely for damages in tort.

■■ The doctrine of sovereign immunity from suit in tort is scarcely a favored one.[43] And statutes vesting jurisdiction in district courts over suits by the United States have been held to apply to suits against States although States were not specifically mentioned as possible defendants.[44] The presumption that the sovereign is not bound unless

visers with respect to matters relating to the jurisdiction of the Supreme Court, which must have included § 1251(b) (2). 337 U.S. at 66, 69 S.Ct. at 950.

40. United States v. Washington, 233 F.2d 811, 813–14 (9th Cir. 1956); Colorado v. United States, 219 F.2d 474, 476–77 (10th Cir. 1954) (relying also on 28 U.S.C.A. § 1355); United States v. Wyoming, 195 F.Supp. 692, 693 (D.Wyo.1961), aff'd 310 F.2d 566 (10th Cir. 1962); Bush v. Orleans Parish School Bd., 188 F.Supp. 916, 921 (E.D.La.1960), aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806 (1961); United States v. Minnesota, 113 F.Supp. 488, 490 (D.Minn.1953); United States v. Ingram, 99 F.Supp. 465, 468 (E.D.Ark. 1951), rev'd on other grounds, 203 F.2d 91 (8th Cir. 1953).

Jurisdiction was assumed without discussion, despite the absence of any statutory basis other than § 1345 in Utah v. United States, 304 F.2d 23 (10th Cir. 1962); Utah State Bd. for Vocational Educ. v. United States, 287 F.2d 713

(10th Cir. 1961); and United States v. California, 143 F.Supp. 957 (N.D.Cal. 1956).

41. See, e. g., Wright, supra note 7 at 473 n. 23; Moore's Commentary on the U.S. Judicial Code, note 39, supra, and related text, also 612–14; Hart & Wechsler, supra note 12, at 228; 38 N.Y.U.L.Rev. 405, 406 (1963); 111 U.Pa.L.Rev. 1011, 1012–13 (1963); 17 Rutgers L.Rev. 620, 624 (1963); Wagner, supra note 26, at 117.

42. The revision did not purport merely to restate prior law: "the Judicial Code of 1948 represents both an evaluation of Title 28 * * * and an enactment into positive law of the evaluation." Moore's Commentary on the U.S. Judicial Code 30. See note 35, supra, and related text.

43. See e. g., 2 Harper & James Law of Torts 1612 (1956).

44. See, e. g., Case v. Bowles, 327 U.S. 92, 98–99, 66 S.Ct. 438, 90 L.Ed. 552; United States v. California, 297 U.S. 175,

named "is an aid to consistent construction of statutes of the enacting sovereign when their purpose is in doubt, but it does not require that the aim of a statute fairly to be inferred be disregarded because not explicitly stated." United States v. California, 297 U.S. 175, 186, 56 S.Ct. 421, 425, 80 L.Ed. 567 (1936).

As we have seen, States may be sued by the United States in the Supreme Court without their consent, and it is difficult to understand how they would benefit if jurisdiction were confined to that Court. The Supreme Court is primarily an appellate tribunal, ill-suited to trial of factual issues commonly crucial in such cases as the present one. Litigation of such issues in the Supreme Court would be inconvenient and costly to both parties, and particularly to the State. Jurisdictional grants to district courts over suits by the United States against States on particular claims have become so commonplace [45] as to sap the substance from the notion that the dignity of the State will suffer damage from a grant of jurisdiction to district courts over suits on all federal claims.[46]

█ Suits by the United States against States, until recently rare,[47] are now not uncommon, and must inevitably increase with the broader activities of both the national government and the governments of the States. Common sense dictates that those suits which involve routine, largely factual disputes be litigated in the district courts,[48] and that the jurisdiction of the Supreme Court be invoked initially only in those rare cases which present large issues.

Reversed.

186, 56 S.Ct. 421, 80 L.Ed. 567; United States v. Montana, and Minnesota v. United States, cited in note 40 supra. In United States v. Alabama, 267 F.2d 808 (5th Cir. 1959), the presumption urged by appellee was applied in construing § 1971(c) of the Civil Rights Act of 1957, P.L. 85–315, 71 Stat. 637. The resulting interpretation was, in effect, reversed by the Congress. United States v. Alabama, 362 U.S. 602, 604, 80 S.Ct. 924, 4 L.Ed. 2d 982 (1960).

45. See note 34.

46. 111 U.Pa.L.Rev. 1011, 1013 (1963).

47. Annotated Constitution of the United States, S.Doc. No. 170, 82d Cong., 2d Sess. 585 (1953).

48. Cf. United States v. California, 297 U.S. 175, 188–89, 56 S.Ct. 421, 80 L.Ed. 567 (1936); Minnesota v. United States, 125 F.2d 636, 639 (8th Cir. 1942).