## Case No. 5,465.

### GITTINGS v. CRAWFORD.

[Taney, 1.][2]

Circuit Court, D. Maryland. April Term, 1838.

JURISDICTION OF DISTRICT COURT—SUITS AGAINST CONSULS AND VICE-CONSULS—IMMUNITIES—LAWS OF NATIONS.

1. In the second section of the 3d article of the constitution of the United States, it is declared that "in all cases affecting ambassadors, other public ministers, and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction;" held, that this does not conflict with and render unconstitutional the act of congress passed 24th September, 1789, § 9 [1 Stat. 76], giving jurisdiction to the district court of the United States, in civil cases, against consuls and vice-consuls.

[Cited in State of Texas v. Lewis, 14 Fed. 67. Quoted in Bors v. Preston, 4 Sup. Ct. 410, 111 U. S. 258.]

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

2. The grant of jurisdiction over a certain subject-matter to one court, does not, of itself, imply that that jurisdiction is to be exclusive. [Cited in Bors v. Preston, 4 Sup. Ct. 410, 111 U. S. 258.]

3. A consul is not entitled, by the laws of nations, to the immunities and privileges of an ambassador or public minister. He is liable to civil suits, like any other individual, in the tribunals of the country in which he resides. [Cited in Bors v. Preston, 4 Sup. Ct. 410, 111 U. S. 258.]

[In error to the district court of the United States for the district of Maryland.]
At law.

Mr. McMahon, for plaintiff in error.
Johnson & Glenn, for defendant in error.

TANEY, Circuit Justice. The suit in this case was brought by John S. Gittings against John Crawford, upon a promissory note made by Crawford to Gittings, for $980, dated December 27, 1834, and payable twenty days after date. The writ stated the plaintiff to be a citizen of the state of Maryland, and the defendant to be the consul of his Britannic majesty. The defendant appeared to the suit, and moved to quash the writ, on the ground that the district court had no jurisdiction over the case; the court below sustained the motion, quashed the writ, and gave judgment in favor of the defendant for costs. [Case unreported.] The case has been brought here by the plaintiff, by writ of error, and the question to be now decided by this court is, whether the act of congress of September 24, 1789, § 9, giving jurisdiction to the district court of the United States, in cases of this description, against consuls and vice-consuls, is constitutional or not.

The clause of the constitution of the United States which is supposed to be violated by this law, is that part of the 2d section of the 3d article, which declares that, "in all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction." It is insisted, that the grant of original jurisdiction in these cases to the supreme court, means exclusive original jurisdiction, and that it is not in the power of congress to confer original jurisdiction, in the cases there mentioned, upon any other court.

The question thus presented for the decision of the circuit court, is certainly a difficult and embarrassed one. Different opinions have been expressed upon it by eminent men in high judicial stations; and the difficulties which arise from the words of the constitution itself have been greatly multiplied by the different constructions, which, at different times, have been given to the clause in question.

The earliest case upon the subject is U. S. v. Ravara [Case No. 16,122], in the year 1793. That was an indictment in the circuit court against a consul, for a misdemeanor; and the counsel for the defendant moved to quash the indictment, upon the ground that the clause of the constitution above quoted vested exclusive jurisdiction in such cases in the supreme court, and that the act of 1789, which conferred original jurisdiction on the circuit court, was unconstitutional and void. A majority of the court, however, overruled the objection, and decided that the grant of original jurisdiction to the supreme court was not exclusive; that congress might vest original jurisdiction, in the cases there enumerated, in other courts, and that the act of 1789, conferring jurisdiction upon the circuit court, was constitutional and valid. At a subsequent term of the circuit court, in 1794, the case came up for trial, Chief Justice Jay presiding, and the court charged that the defendant was not privileged from prosecution in virtue of his consular appointment, and the jury, under that charge, found him guilty.

It appears, then, that in the circuit court, upon two different occasions, it was held, that the jurisdiction conferred by the constitution upon the supreme court, in cases affecting consuls, was not exclusive. And these decisions were made by eminent and distinguished judges, some of whom had been members of the convention which framed the constitution, and all of whom had taken prominent and leading parts in the discussions which preceded its adoption by the people. These discussions have all the force and authority which courts have uniformly given to the contemporaneous construction of a law.

But the authority of the decisions in the circuit court was shaken by the case of Marbury v. Madison, 1 Cranch [5 U. S.] 137, where the question as to the construction of this clause of the constitution came, for the first time, before the supreme court. In the opinion delivered in that case, it was said, in general terms, by the court, that the original jurisdiction conferred on the supreme court was exclusive.

In Cohens v. Virginia, 6 Wheat. [19 U. S.] 378, the construction of this part of the constitution again came under consideration. And although the court reviewed and recalled some of the dicta in the case of Marbury v. Madison [supra], yet what had been there said on the point now in question, was not disturbed, and the court again strongly intimated that the clause granting original jurisdiction to the supreme court was so far exclusive, that congress could not grant original jurisdiction, in the cases enumerated, to an inferior tribunal of the United States.

And in Osborn v. United States Bank, 9 Wheat. [22 U. S.] 820, the chief justice distinctly expressed the opinion that the original jurisdiction granted to the supreme court, is exclusive, and cannot be given by congress to any other tribunal.

It is worthy of remark, that in two of these three cases in the supreme court, the question was upon the jurisdiction of that court, and not upon the jurisdiction of an inferior

tribunal of the United States. And in the last of them, the question was upon the jurisdiction of the courts of the United States, as contradistinguished from the state courts; and the further question whether the case before them arose under a law of the United States. In neither of these three, was the point directly presented, whether congress could grant original jurisdiction to an inferior court, in the cases enumerated in the clause now in controversy. All therefore that was said by the court in these cases, on that question, was by way of argument and illustration, and not necessarily involved in the decision of the cases then before the court. And we are warned by the chief justice, in the opinion delivered by him in Cohens v. Virginia [supra], that principles thus stated are not to be regarded as binding adjudications; and some of the principles strongly put forth by him in the case of Marbury v. Madison, are repudiated and overruled in Cohens v. Virginia.

Yet, after these repeated declarations of the opinion of the supreme court, so explicitly reiterated in the case of Osborn v. United States Bank [supra], I should not have felt myself at liberty to adopt a different construction of the article in question, if the action of the supreme court on this subject had stopped with the last-mentioned case; for the controversy involves no right reserved to the states or secured to individual citizens. It is a question merely of the distribution of power among the courts of the United States, and when the supreme court had so repeatedly expressed its opinion, that that court, under the constitution, had exclusive original jurisdiction over the subject-matters enumerated in the clause now under consideration, it would hardly have been proper or decorous in the circuit court to disregard those opinions, although they were expressed when the point in controversy was not directly before it.

But the action of the supreme court did not stop with the cases above cited; the point in dispute was brought directly before the court in U. S. v. Ortega, 11 Wheat. [24 U. S.] 467. That case came before the supreme court upon a certificate of division of the judges of the circuit court, and the points presented by the certificate were—1. Whether it was a case affecting an ambassador or public minister; and—2. If it were such a case, was the act of 1789, giving original jurisdiction to the circuit court, constitutional or not? The court said it was not necessary to decide the second point, because they were of opinion that it was not a case affecting an ambassador or public minister. It can hardly be supposed, that the supreme court would have refused to express an opinion on the second point, if they had regarded the question as settled by the previous decisions of that court. The manner in which they treated it, when thus directly brought into discussion, shows that in their opinion, it was

still an open one, and had not been concluded by anything said in the different opinions of the court to which I have before referred; and the reporter in a note to this case expressly states that the point in question had not been decided by the supreme court.

But in another and very late case the court have, in my judgment, distinctly affirmed the constitutionality of the act of 1789, on the very point in controversy. In the case of Davis v. Packard, 7 Pet. [32 U. S.] 281, the question was brought before the court by writ of error from the court of errors of New York, which court was supposed to have decided that a state court had jurisdiction in cases where a consul was concerned. It turned out afterwards, that the court had not so decided; but the supreme court, when the case came before them, interpreted the record otherwise, and, acting upon that interpretation, reviewed the judgment of the court of errors of New York. Judge Thompson, in delivering the judgment of the supreme court, says: "As an abstract question, it is difficult to understand, on what ground a state court can claim jurisdiction of civil suits against foreign consuls. By the constitution, the judicial power of the United States extends to all cases affecting ambassadors, other public ministers and consuls; and the judiciary act of 1789, § 9 (1 Stat. 76), gives to the district courts of the United States, exclusively of the courts of the several states, jurisdiction of all suits against consuls and vice-consuls, except for certain offences mentioned in the act." This language used by the court, with the point directly before them, can only be understood as an affirmance of the constitutionality of the act of 1789; for the exclusion of the state courts is not put upon the ground, that they were impliedly excluded by the grant of original jurisdiction in such cases to the supreme court; but the decision is placed on the grant of power to the courts of the United States generally, and on the act of 1789, which conferred the jurisdiction on the district courts, and excluded the state courts. No notice is taken, in that opinion, of the clause conferring original jurisdiction on the supreme court. The exclusion of the state courts is not derived from it, but from the act of 1789; so, of course, that act was deemed constitutional.

This decision is in conformity with the contemporaneous construction of the constitution, given by the circuit court in the case of U. S. v. Ravara, before referred to. And although the authority of that case was much doubted, after the opinions delivered in Marbury v. Madison, Cohens v. Virginia, and Osborn v. United States Bank [supra], and more especially on account of the high and just reputation of the eminent judge by whom those opinions were delivered, yet this vexed question ought, in my judgment, to be regarded as now settled by the case of Davis v. Packard [supra].

It is worthy of remark, also, that the elementary writers, generally, seem to have re-

garded the act of 1789 as constitutional, and to have relied on the case of U. S. v. Ravara; Vide [U. S. v. Ortega] 11 Wheat. [24 U. S.] 473, note; Rawle, Const. 221, 222; Conk. Exec. Powers, 160; Serg. Const. Law, cc. 17, 18.

Independently, however, of any judicial authority, the conclusions of my own mind must have been very clear and free from doubt, before I should have felt myself justified in pronouncing an act of congress passed in 1789 a violation of the constitution. It was the first congress that met under the constitution, and in it were many men who had taken a prominent and leading part in framing and supporting that instrument, and who certainly well understood the meaning of the words they used. The fact that the law in question was passed by such a body, is strong evidence that the words of the constitution were not intended to forbid its passage.

Nor am I by any means satisfied that the words used require a different construction from that given to them by the act of 1789. There are no express words of exclusion in the clause which confers original jurisdiction, in the cases mentioned, upon the supreme court. Why should they be implied? They are clearly not implied in relation to the state courts, in the clause immediately preceding, which gives judicial power in certain cases to the courts of the United States; for there are some subjects there enumerated from which it never could have been designed to exclude altogether the state authorities. For example, the constitution of the United States is the supreme law in the several states, and the courts of the states are bound to respect and interpret it, and to declare any state law null and void which violates its provisions. Again, the laws of congress, when passed in the exercise of its constitutional powers, are obligatory upon the state courts, and must be construed by the courts, and obeyed by them, whenever they come in conflict with the laws of the state. It is true, that the decisions of the state courts must be subordinate to, and subject to the revision of, the supreme court of the United States, to whom the ultimate decision of such questions belongs; yet, the state courts are not, and cannot, from the nature of our institutions, be excluded from all jurisdiction in such matters, and the grant of power to the courts of the United States has never been held to exclude them. If the grant of jurisdiction to the courts of the United States, generally, is not, by implication, the exclusion of all other courts, in the cases enumerated in that grant of power, why should the grant of original jurisdiction to the supreme court in certain cases, in the very same section, and by the next succeeding clause, be held to imply such exclusion? The original jurisdiction conferred on the supreme court is not inconsistent with the exercise of original jurisdiction on the same subjects by the inferior courts of the United

States, and there is no necessity, therefore, for implying an intention to exclude them.

Indeed, if the grant of original jurisdiction, in the cases mentioned, implied exclusion of jurisdiction on those subjects, the exclusion would seem most naturally to apply to the appellate jurisdiction of the court itself, and to prohibit it from the exercise of the latter in the cases where the former was given. The subject-matter of this part of the section is the jurisdiction of the supreme court, and it is divided into appellate and original. The cases are enumerated in which it shall have original jurisdiction; and appellate is given to it in others. Now it might very well be supposed, that in thus classing the subjects upon which it should have original, and upon which it should have appellate jurisdiction, the framers of the constitution meant to limit its jurisdiction in the manner in which it is there divided, and to exclude it from original jurisdiction where appellate was given, and to exclude it from appellate where original was given; and this was supposed to be the construction given to it in the case of Marbury v. Madison [supra], by the learned judge who delivered the opinion. But when the subject was further discussed and considered in the case of Cohens v. Virginia [supra], it became manifest, that such a construction could not be sustained, without depriving the supreme court of some of its most important and necessary powers; powers which, from the whole frame of the instrument, it was evidently intended that the court should exercise; and which, although classed in its original jurisdiction, it could exercise only in an appellate form, when the question arose in a suit in a state court. The language used in Marbury v. Madison was therefore qualified and explained, and it was decided, that the grant of original jurisdiction, in the cases enumerated, to the supreme court, did not exclude from appellate jurisdiction over the same subjects. And this latter construction is now the established law of the country. If the arrangement and classification of the subjects of jurisdiction into appellate and original, as respects the supreme court, do not exclude that tribunal from appellate power in the cases where original jurisdiction is granted, can it be right, from the same clause, to imply words of exclusion as respects other courts whose jurisdiction is not there limited or prescribed, but left for the future regulation of congress? The true rule in this case is, I think, the rule which is constantly applied to ordinary acts of legislation, in which the grant of jurisdiction over a certain subject-matter to one court, does not, of itself, imply that that jurisdiction is to be exclusive. In the clause in question, there is nothing but mere affirmative words of grant, and none that import a design to exclude the subordinate jurisdiction of other courts of the United States on the same subject-matter.

Nor is there anything in the official char-

acter and functions of a consul which should lead us to suppose, that the framers of the constitution meant to confine cases affecting such officer exclusively to the supreme court. A consul is not entitled, by the laws of nations, to the immunities and privileges of an ambassador or public minister. He is liable to civil suits, like any other individual, in the tribunals of the country in which he resides; and may be punished in its courts for any offence he may commit against its laws. Wheat. Int. Law, 181; 1 Kent, Comm. 43, 45. He, usually, is a person engaged in commerce; and in this country, as well as others, it often happens, that the consular office is conferred by a foreign government on one of our own citizens. It could hardly have been the intention of the statesmen who framed our constitution, to require that one of our citizens who had a petty claim of even less than five dollars against another citizen, who had been clothed by some foreign government with the consular office, should be compelled to go into the supreme court to have a jury summoned in order to enable him to recover it; nor could it have been intended, that the time of that court, with all its high duties to perform, should be taken up with the trial of every petty offence that might be committed by a consul, in any part of the United States; that consul too, being often one of our own citizens. There is no reason, either of policy or convenience, for introducing such a provision in the constitution; and we cannot, with any probability, impute such a design to the great men who, with so much wisdom and foresight, framed the constitution of the United States; they have used no words expressly prohibiting congress from giving original jurisdiction in cases affecting consuls, to the inferior judicial tribunals of the United States; and in the absence of every express prohibition, I see no sufficient grounds to justify this court in implying it, and pronouncing, merely upon such implication, that the act of 1789 is unconstitutional and void.

The judgment of the district court in this case must, therefore, be reversed, and the motion to quash the writ which issued from that court overruled.