## Case No. 5,677.

### GRAHAM v. STUCKEN et al.

[4 Blatchf. 50.][1]

Circuit Court, S. D. New York. April 27, 1857.

JURISDICTION—FOREIGN CONSUL—WRIT OF NE EXEAT—USURIOUS CONTRACT.

1. This court has jurisdiction of a suit against a foreign consul.

[Cited in State v. Lewis, 14 Fed. 68; Bors v. Preston, 111 U. S. 259, 4 Sup. Ct. 410; Ames v. State, 111 U. S. 468, 4 Sup. Ct. 446.]

2. A demand must, in order to be a foundation for a writ of ne exeat, be an equitable debt or pecuniary claim, and be certain or capable of being reduced to certainty.

3. Where a bill was filed to set aside a bill of sale of a vessel, on the ground that it was made in execution of a contract void for usury, and for a return of the vessel, or the payment of her value, or an account of her earnings: Held, that the claim was not one on which a writ of ne exeat could be issued.

In equity. This was an application [by John Graham] for a writ of ne exeat against the defendant [Edward] Stucken, founded upon the allegation, supported by affidavit, that he was about to break up his residence in New York and remove from the country. The papers read in opposition to the application admitted that Stucken was about to embark for Europe; but it was insisted that this was only for a temporary residence, and that it was not designed to close his business establishment in New York. It was not stated, however, when he expected to return, and it was admitted that he had offered his house and furniture for sale, but with the intention of making other arrangements for a residence in New York. It also appeared, that Stucken was consul-general, in the United States, for the kingdom of Hanover, and consul for the Duke of Saxe-Weimar, for the state of New York. The bill was filed to set aside bills of sale of two steamers—the Ocean Bird and the St. Lawrence—and also of one-third of another steamer—the United States—the whole claimed to be of the aggregate value of about $400,000, and prayed that the vessels might be restored to the plaintiff, or, in lieu thereof, that their value might be paid to him by the firm of Meyer & Stucken, to whom the bills of sale were executed by the plaintiff. The bill charged that the transactions arose out of a loan of money upon usurious interest; that the loan was of $100,000, for four months; that $126,000 was agreed to be paid for the same; that the vessels were pledged as collateral security for the payment; and that the form of bills of sale was adopted for the purpose of covering the usurious loan. The defendant Stucken insisted that, although there was an application by the plaintiff for a loan of money upon the ships, it was refused; that the transaction resulted in a purchase of them

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

by his firm for $105.000, without any condition or qualification; that the purchase money had been paid; that the vessels had since been sold at Cuba for $191,376 85, and were out of his possession and out of the jurisdiction of the court; and that he had been obliged to make large advances, over and above the $105,000, to third persons, to remove liens upon the vessels existing at the time of the purchase. Meyer, the other member of the firm, was abroad, out of the jurisdiction of the court, and, therefore. could not be made a party to the bill. The defendants other than Stucken had no direct interest in the controversy. There had been a demurrer to the bill, admitting the facts stated, but presenting certain legal objections to the right of the plaintiff to the relief claimed.

Charles O'Conor and Francis B. Cutting, for plaintiff.

James T. Brady and Gilbert Dean, for Stucken.

NELSON, Circuit Justice. The first question presented on this application is, whether the court is without jurisdiction of the case, for the reason that the defendant Stucken is a foreign consul; for then, of course, no order for the writ sought to be obtained can be granted. The question has not been decided by any judicial authority, and was, it seems, purposely waived by the supreme court in the case of U. S. v. Ortega, 11 Wheat. [24 U. S.] 467. See, also, note to that case, 469–475; 1 Kent, Comm. 315; Curt. Comm. § 108. But, notwithstanding this apparent doubt, it is certain that the framers of the judiciary act of 1789 [1 Stat. 73] understood the constitution as admitting jurisdiction over foreign consuls to be vested in other federal courts besides the supreme court. The argument against the jurisdiction of this court is, that the constitution has vested exclusive jurisdiction in the case in the supreme court of the United States, and that this suit should have been commenced in that court. The last clause of section 2 of article 3 of the constitution declares, that "in all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction." Congress, in distributing and regulating this grant of jurisdiction, provided, in section 13 of the judiciary act. that the supreme court should have exclusive jurisdiction in all cases against ambassadors, &c., and original, but not exclusive jurisdiction in cases "in which a consul or vice-consul shall be a party," thus clearly rejecting the idea that the grant in the constitution in respect to consuls was exclusively to the supreme court.

Again the grant of original jurisdiction to the supreme court is the same in the cases (mentioned in the previous clause of the constitution) "in which a state shall be a party," as in the case of a consul. Those cases are controversies—1. Between two or more states; (2) between a state and citizens of another state; (3) between a state and foreign states; and, (4) between a state and citizens or subjects of a foreign state, that is, aliens. Now, if the grant of original jurisdiction be exclusive in the supreme court in the case of a consul, it is equally exclusive in the four cases above enumerated; for the grant is in the same clause and on the same terms. And yet, in the 13th section of the judiciary act, already referred to, it is provided that the supreme court shall have exclusive jurisdiction, &c., where a state is a party, &c., except between a state and citizens of other states, or aliens, in which latter case it shall have original, but not exclusive jurisdiction. According to the argument, the whole of this exception would be unconstitutional, as the cases mentioned should have been vested exclusively in the supreme court.

And, again,—what is still more explicit in respect to the practical construction of the framers of the judiciary act, many of whom were eminent members of the convention that formed the constitution—the 9th section provides that the district courts of the United States shall have jurisdiction, exclusive of the courts of the states, of all suits against consuls or vice-consuls, &c. In the face of all this legislative interpretation by the fathers of the constitution, and all this acquiescence therein since 1789, I cannot say that the jurisdiction in this case is exclusively in the supreme court, but am satisfied that it may be conferred upon the inferior tribunals of the federal judiciary. Being pressed for time, I have stated simply the grounds of this conclusion, without giving more at large the reasons in support of it.

It has been also objected that, admitting that the jurisdiction is not exclusive in the supreme court, still it has not been vested in the circuit courts of the United States. The 11th section of the judiciary act provides, that the circuit courts shall have original cognizance, concurrently with the state courts, of suits between a citizen of the state where the suit is brought and a citizen of another state. The case before me falls directly within this provision. It is said, however, that the jurisdiction cannot be concurrent with the state court, as that court has no jurisdiction of the case, it having been excluded by force of the 9th section, already referred to. But the answer to this suggestion is, that the phraseology is designed simply to save the jurisdiction of the state court where it exists, in other words, to exclude a conclusion.

It has been said, also, that if the jurisdiction of the case is not in the supreme court, and may be vested in inferior courts, it has been expressly vested in the district court, which is true. But there is nothing in the provision conferring it upon that court, that excludes the jurisdiction of the circuit court.

I am satisfied, therefore, that this court has jurisdiction to hear and decide this motion, and also the case out of which it has arisen.

The next ground taken in resisting the motion is, that the demand in this suit is not one in respect to which, according to the usage and practice of the court, a writ of the kind in question will be granted. The demand must be an equitable debt or pecuniary claim, and be certain, or capable of being reduced to certainty. A general unliquidated demand, or one in the nature of a claim for damages, which cannot be regarded as a debt until the decree, will not lay a foundation for the writ. In the case of Flack v. Holm, 1 Jac. & W. 404, where goods had been consigned for sale, and the bill, among other things, claimed a recovery for fraudulently delaying the sale of the goods, whereby a loss accrued, and a motion for a ne exeat was made, and bail marked at £3,600, Lord Eldon observed: "My difficulty is whether that is not too large a sum. The writ only goes where the debt is sworn to. If damages only are to be recovered at law or in equity, that will not do. You cannot have it for any loss which may have accrued by keeping these goods out of the market." Again, he remarked, that the writ "is only applied to that which is really a debt, and not to that which may become a debt, when a recovery in damages shall have ascertained what is due." Now, within this principle, I am of opinion, that the present case is one in which it would not be proper to grant the writ. I can see no debt or pecuniary demand set up against the defendant. The foundation of the bill is that he has got possession of the ships under a contract void on the ground of usury, and that, under the law of New York, which, I admit, must govern, the plaintiff is entitled to set this contract aside, and to have a return of the property, or in lieu thereof, damages to the extent of its value. The plaintiff also claims an account of the earnings of the vessels; but this is simply a mode of arriving at the damages sustained from the wrongful possession and detention of them. The claim is, in substance, that the defendant is a wrongdoer, in taking the property and converting it to his own use. There is no debt or duty set forth in the bill but that which exists in every case of a wrongful conversion of another man's property. This is not a debt, or duty, or pecuniary demand, within the meaning of the rule. One arising upon contract, express or implied, between the parties, is, I think, essential to lay a foundation for the proceeding. I agree that a case is made out which would justify this somewhat extreme remedy, if the nature of the demand in controversy were such as warranted its application. But as, in my judgment, it is not, the motion must be denied.

[NOTE. The original proceeding in this case was by bill in equity heard before Nelson, Circuit Justice, in which relief was decreed the complainant in the sum of $200,000, with interest. Case No. 5,675.

[An action of trover was also begun against the copartner, Meyer, in which the court (Ingersoll, District Judge) discharged the defendant upon common bail, but, as he was not a party to the suit in equity, refused to order the plaintiff to elect as to which action he should prosecute. Case No. 5,673.]