**Raymond FOXGORD, Individually and as Trustee of the Foxgord Trust, Cecilia Foxgord, Plaintiffs-Appellees,**

v.

**Baron Herbert HISCHEMOELLER, Defendant-Appellant.**

**No. 85–5976.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1987.

Decided June 23, 1987.

---

Robert E. Aitken, Long Beach, Cal., for defendant-apellant.

Gerald Goldfarb, Los Angeles, Cal., for plaintiffs-appellees.

Before WALLACE, ALARCON and THOMPSON,* Circuit Judges.

ALARCON, Circuit Judge:

In this fraud and breach of guaranty action, defendant-appellant Baron Herbert Hischemoeller (hereinafter Hischemoeller) appeals from the district court's judgment against him for damages in favor of plaintiffs-appellees Raymond Foxgord, an individual and as trustee of the Foxgord Trust, and his wife, Cecilia Foxgord (hereinafter the Foxgords) following a bench trial. This case presents a novel issue. Does a district court have exclusive subject matter jurisdiction in an action against the *honorary* consul general of another country under 28 U.S.C. § 1351(1) (1982), which gives federal courts exclusive jurisdiction over actions against "consuls or vice consuls," where the honorary consul general is a citizen of the United States and is sued for his private actions? We hold that a district court does not have exclusive subject matter jurisdiction over a proceeding involving private actions against an American citizen who is an honorary consul general for another country under 28 U.S.C. § 1351(1).

## PERTINENT FACTS

On September 16, 1980, the Foxgords agreed to loan $500,000 to codefendants Henry Perdon and his corporation, Transamerica Minerals, Inc. (hereinafter TM), to purchase gypsum claims in Arizona and Utah. In return, TM gave the Foxgords a promissory note for $675,000, payable in one year with monthly interest payments of $11,250, and a $250,000 "consulting agreement" payable at $10,000 per month for twenty-five months. Hischemoeller and his corporation HISMOCO, Inc., Perdon and codefendant Arthur Webb agreed to guaranty TM's promissory note to the Foxgords. Perdon and TM thereafter defaulted on the promissory note and consulting agreement.

The Foxgords instituted this action in federal court against Perdon, Webb, His-

* Judge Tang recused himself after oral argument in this case. Judge Thompson was assigned as a replacement.

chemoeller, HISMOCO, and TM, claiming fraud and breach of guaranty. After a bench trial, the district court concluded (1) that the defendants were guilty of fraud, and (2) Hischemoeller and HISMOCO were guilty of breach of warranty, and awarded $1,549,642 in damages. Only Hischemoeller appealed.

## ANALYSIS

### SUBJECT MATTER JURISDICTION

Hischemoeller contends the district court did not have subject matter jurisdiction over this case. Jurisdiction was predicated on 28 U.S.C. § 1351(1), which provides in pertinent part: "The district court shall have original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against—[¶](1) consuls or vice consuls of foreign states...." Hischemoeller, an American citizen, is an honorary consul general of the Ivory Coast. Hischemoeller argues that American citizens who serve as honorary consuls, such as himself, do not fall within the meaning of "consuls or vice consuls" under section 1351(1).

Our objective when interpreting a federal statute "is to ascertain the intent of Congress and to give effect to legislative will." *United States v. Taylor*, 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). We begin with the statute's language, *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see also INS v. Cardoza-Fonseca*, — U.S. ——, 107 S.Ct. 1207, 1212–14, 1222, 94 L.Ed.2d 434 (1987).

The existence of subject matter jurisdiction presents a question of law reviewed *de novo* by the court of appeals. *Peter Starr Production Co. v. Twin Con-tinental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986).

### A. *Plain Meaning of 28 U.S.C. § 1351(1)*

Our initial inquiry in interpreting 28 U.S.C. § 1351(1) is whether an honorary consul comes within the terms "consuls or vice consuls." "The most persuasive evidence of ... [congressional] intent is the words selected by Congress." *Director, Office of Workers' Compensation Programs v. Forsyth Energy, Inc.*, 666 F.2d 1104, 1107 (7th Cir.1981).

It is a maxim of statutory construction that unless otherwise defined, words should be given their ordinary, common meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Since Title 28 does not define "consuls or vice consuls," we must look to the dictionary for the ordinary, common meaning of the word "consul." Webster's Dictionary defines "consul" as "an official appointed by or with the authority of a government to *reside in a foreign country* to represent the interests of citizens of the appointing country". Webster's Third New International Dictionary 489 (1976) (emphasis added). In Black's Law Dictionary, "consul" is defined as "[a] public officer *residing in a foreign country* responsible for developing and protecting the economic interests of his government and looking after the welfare of his government's citizens who may be traveling or residing within his jurisdiction." Black's Law Dictionary 286 (5th ed. 1979) (emphasis added). Under the common, ordinary meaning of the term, "consul" refers to a citizen of the country which appointed him. Thus, an *honorary* consul who is not a citizen of the appointing country does not come within the ordinary, common meaning of the word "consul."

Similarly, the words "consul" and "honorary consul" are not synonymous in the international community. The international community distinguishes among a career consul, an honorary consul who is not a citizen of the appointing country, and an honorary consul who is a citizen of the appointing country. A career consul (also

called *consules missi, consuls de carriere,* salaried consuls, and professional consuls) is a national of the appointing country and does not engage in private business of any kind. L. Lee, Consular Law and Practice 14 (1961) (hereinafter Consular Law). Under Chapter II of the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 78, T.I.A.S. No. 6820 (hereinafter Consular Convention), to which the United States is a party, a career consul is afforded many more privileges and immunities than an honorary consul. *See, e.g.,* arts. 32–33, 41, 48–50, 52. For example, a consul's premises are inviolable, and a consul is not amenable to the jurisdiction of judicial or administrative authorities of the receiving state in respect to acts performed in the exercise of consular functions.[1] Arts. 31(1), 43(1). A career consul who carries on private gainful employment is not accorded the privileges and immunities of Chapter II. Art. 57(2)(a).

Honorary consuls (also called *consules electi, consuls marchands,* non-career consuls, unsalaried consuls, and trading or merchant consuls) on the other hand, are permitted to engage in gainful employment in addition to their consular duties. *Consular Law, supra,* at 14; Harvard Law School, *Legal Position and Function of Consuls,* in Research in International Law art. 26, at 354, comment (1932). Honorary consuls are selected locally from residents of the receiving state, whether they are nationals or permanent residents of the receiving, appointing, or a third state. *Consular Law, supra,* at 14.

On the whole, the functional privileges and immunities of honorary consuls are more restrictive than those of career consuls. Within the rank of honorary consul, those who are citizens or permanent residents of the receiving state are entitled to even fewer privileges and immunities than an honorary consul who is a citizen of the appointing country. L. Lee, Vienna Convention on Consular Relations 163 (1966) (hereinafter Lee). For example, the princi-

ple of inviolability of consular premises is substituted by mere protection thereof "against any intrusion or damage" for honorary consuls who are not citizens or permanent residents of the receiving state. Consular Convention, *supra,* Art. 59.

Honorary consuls who are nationals or permanent residents of the receiving state, such as Hischemoeller, possess very few privileges and immunities. *See* Consular Convention, *supra,* art. 71(1); Lee, *supra,* at 163. For example, they enjoy only "immunity from jurisdiction and personal inviolability in respect of official acts performed in the exercise of their functions...." Consular Convention, *supra,* art. 71(1).

The difference in treatment of honorary consuls who are citizens of the receiving state and other consuls under the Consular Convention is consistent with our conclusion that the ordinary, common meaning of the term "consul" as used in 28 U.S.C. § 1351(1) does not include citizens of the receiving state. Although the Consular Convention does not govern the jurisdiction of federal courts, the distinctions made by the international community between a "consul" and "honorary consul" demonstrates that these terms are not functionally synonymous.

During oral argument, the Foxgords claimed for the first time that the Supreme Court's decision in *In re Baiz,* 135 U.S. 403, 10 S.Ct. 854, 34 L.Ed. 222 (1890) is controlling. In *Baiz,* the issue before the Supreme Court was whether the petitioner, a consul general from Guatemala, was also a public minister or charge d'affaires *ad interim* of Guatemala while the minister of Guatemala was out of the United States, thereby vesting the Supreme Court with exclusive jurisdiction, and not the district court, in the libel action against him. *Id.* at 418, 425, 10 S.Ct. at 857, 860. In dictum, the Supreme Court stated without analysis that unless petitioner "belonged to the class of official personages subject to suits

---

1. Article 43(1) does not apply to civil actions arising out of either a contract concluded by a consul in which he did not contract as an agent of the appointing country or by a third party for damage arising from an accident in the receiving state caused by a vehicle, vessel or aircraft. Consular Convention, *supra,* art. 43(2).

or proceedings only in this [C]ourt," the district court had jurisdiction because the petitioner was the consul general of Guatemala. *Id.* at 418, 10 S.Ct. at 857. The Court was not called upon to decide the issue which is before this court, namely, does an American citizen who is an honorary consul general from another country come within 28 U.S.C. § 1351(1). Thus, the Foxgords' reliance on *Biaz* is misplaced.

**B.** *Legislative History of 28 U.S.C. § 1351(1)*

■ We next determine if the legislative history of 28 U.S.C. § 1351(1) requires the conclusion that the statute is applicable to an honorary consul who is an American citizen in spite of the plain language of the statute. This court may give effect to a clearly expressed legislative intent which is contrary to the language of the statute itself. *Consumer Product Safety Comm'n,* 447 U.S. at 108, 100 S.Ct. at 2056; *see* 2A N. Singer, Sutherland Statutory Construction § 45.12, at 54 (Sands 4th ed. 1984) (hereinafter Singer) ("It is fundamental, however, that departure from the literal construction of a statute is justified when such a construction ... would clearly be inconsistent with the purposes and policies of the act in question.") (footnote omitted).

We are mindful of the principle that where a statute is clear on its face, it is not necessary to look to its legislative history to discern its meaning and scope. *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978).

The Supreme Court has instructed that "[u]nless exceptional circumstances dictate otherwise, '[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.' *Rubin v. United States,* 449 U.S. 424, 430 [101 S.Ct. 698, 66 L.Ed.2d 633] ... (1981)." *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'r,* —— U.S. ——, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987). We have concluded that 28 U.S.C. § 1351(1) is unambiguous. Section 1351 has been part of our law for almost 200 years. It is surprising that no other

court has been called upon to discuss its application to an honorary consul. It is quite possible that other nations have erroneously assumed that honorary consuls were covered by section 1351. Because of the potential impact of our decision upon foreign countries in the selection of persons to serve in their consulates in the United States, we believe this to be an exceptional case in which it would be appropriate and prudent to explain the historical basis for Congress' determination that the protection afforded by section 1351 should be limited to consuls.

**1. The Statute**

The first Congress codified the constitutional grant of federal jurisdiction over consuls in section 9 of the Judiciary Act of 1789, which states in pertinent part: "[T]he district courts ... shall also have jurisdiction exclusively of the courts of the several States, of all suits against consuls or vice-consuls...." Act of September 24, 1789, ch. 20, § 9, 1 Stat. 73, 76–77. The sparse legislative history of section 9, the precursor to 28 U.S.C. § 1351, does not reveal that Congress intended an honorary consul who is an American citizen to come within section 1351(1).

Section 9 of the Judiciary Act on this subject was carried into the Revised Statutes (enacted June 22, 1874) as section 711(8) without any substantial change. Section 711(8) provided that "all suits or proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, or against consuls or vice consuls" shall be exclusive of the state courts.

By the Act of February 18, 1875, 18 Stat. 316, 318, section 711(8) was repealed, so that by the existing law, there was "no statutory provision which, in terms, makes the jurisdiction of the courts of the United States exclusive of the State courts in suits against consuls or vice-consuls." *Bors v. Preston,* 111 U.S. 252, 261, 4 S.Ct. 407, 411, 28 L.Ed. 419 (1884). The intent of Congress in the repeal of this statute is not apparent from the legislative history. *See In re Iasigi,* 79 F. 751, 753 (S.D.N.Y.1897)

("As respects any actual intention of congress, the repeal of paragraph 8 of section 711, by the act of 1875, affords no light. The explanation of that repeal is difficult, if not impossible.").

In *Iasigi*, the district court offered a possible explanation why Congress repealed the statute which gave federal courts exclusive jurisdiction of civil cases against consuls:

> There is a manifest propriety, amounting sometimes to a practical necessity in order to avoid international complications, that the prosecution, punishment or pardon of consuls which would necessarily materially affect their personal attention to their consular duties, should be within the control of the federal courts and of the federal government to which the consuls are accredited and which alone is responsible to foreign powers for the treatment of their representatives. While imprisonment for debt continued, the same considerations, though in a less degree, applied to civil suits. *But since imprisonment for debt has been abolished, the grounds for exclusive federal jurisdiction in civil suits against consuls exist in but small degree, if at all; while in all criminal cases, all the original considerations of policy and propriety remain unchanged.*

79 F. at 754 (emphasis added). This rationale for eliminating exclusive federal jurisdiction in civil cases against consuls proved to be incorrect. In 1911, Congress reinstated exclusive federal jurisdiction in cases against consuls, Act of March 3, 1911, 36 Stat. 1087, 1093, 1160, to "correct[ ] a mistake of omission on the part of Congress on the occasion of the former [1875] revision." 46 Cong.Rec. 1,538 (1911) (statement of Sen. Heyburn).

In 1978, Congress amended section 1351 to include "members of a mission or members of their families" in the grant of exclusive federal jurisdiction. 28 U.S.C. § 1351(2) (1982).

█ There is nothing in the legislative history of 28 U.S.C. § 1351(1) which reveals that Congress intended honorary consuls who are American citizens to come within the meaning of "consuls or vice consuls." We discern from other federal statutes that Congress is cognizant of the significance of labeling a position "honorary." *See, e.g.,* 12 U.S.C. §§ 1464(d)(15), 1730(r)(4), 3201(4) (1982) (referring to an "honorary director"); 36 U.S.C. § 343 (1982) (referring to an "honorary president"). Under the maxim of statutory construction, "expressio unius est exclusio alterius," where a statute names the parties who come within its provisions, other unnamed parties are excluded. Singer, *supra,* § 47.23, at 194. Thus, if Congress had intended honorary consuls who are American citizens to come within 28 U.S.C. § 1351(1), it would have expressly so provided.

## 2. The Constitution

Since many of the Framers of the Constitution were members of the first Congress which enacted section 9 of the Judiciary Act of 1789, *Ames v. Kansas,* 111 U.S. 449, 463, 464, 4 S.Ct. 437, 443, 444, 28 L.Ed. 482 (1884), we may look to the constitutional basis for the enactment of 28 U.S.C. § 1351(1) to determine if Congress intended federal courts to exercise exclusive jurisdiction of honorary consuls who are American citizens. Article III, section 2 of the United States Constitution, which establishes federal jurisdiction over consuls, provides: "The judicial Power shall extend to ... all Cases affecting Ambassadors, other public Ministers and Consuls...."

Reports of the Constitutional Convention of 1787 disclose that the content of this constitutional provision remained unchanged from its introduction on May 29, 1787 until the members of the Convention signed the charter on September 17, 1787. G. Schulz, Creation of the Federal Judiciary: A Review of the Debates in the Federal and State Constitutional Conventions; and Other Papers, S. Doc. No. 91, 75th Cong., 1st Sess. 2, 25, 34–35 (1937). In the debates in the state conventions on the ratification of the Constitution, it was noted that "very little objection will be offered to this clause; on the contrary, it will be allowed proper and unexceptionable." 2 The Debates in the Several State

Conventions on the Adoption of the Federal Constitution 490 (J. Elliot 2d ed. 1907) (hereinafter Debates) (statement of Wilson, Penn.).

During the debates in the state conventions, the reason often mentioned for permitting federal courts to exercise exclusive jurisdiction in cases involving ambassadors, other public ministers and consuls was to "perpetuate harmony between us and foreign powers." 3 Debates, *supra*, at 570, 571 (statement of Gov. Randolph, Va.). "This can only be done by giving the federal judiciary exclusive jurisdiction. Controversies affecting the interest of the United States ought to be determined by their own judiciary, and not be left to partial, local tribunals." *Id.* at 532 (statement of James Madison, Va.). During the debate in Virginia, James Madison explained that it is necessary for federal courts to possess exclusive jurisdiction over these cases—and cases involving treaties, maritime, and admiralty—to secure uniformity of decision and because "our intercourse with foreign nations will be affected by decisions of this kind.…" *Id.*

In explaining and defending the Constitution and in particular article III, section 2, to his home state of New York, Alexander Hamilton noted in *The Federalist Papers* that "[alt]hough consuls have not in strictness a diplomatic character, yet as they are the public agents of *the nations to which they belong*, the same observation is in a great measure applicable to them," i.e., that jurisdiction over consuls must exist in the federal courts to preserve the public peace and out of respect for the sovereigns whom they represent. The Federalist No. 81, at 548 (A. Hamilton) (J. Cooke ed. 1961) (emphasis added).

Significantly, Hamilton explains in *The Federalist Papers* that under article III, section 2, "[t]he judiciary authority of the union is to extend—[¶] … to all cases affecting ambassadors, other public ministers and consuls.… [who] belong to the fourth class of the enumerated cases, as they have an evident connection with the preservation of the national peace." The Federalist No. 80, at 540 (A. Hamilton) (J.

Cooke ed. 1961). Hamilton's fourth class involves *citizens of foreign states:*

A distinction may perhaps be imagined between cases arising upon treaties and the laws of nations, and those which may stand merely on the footing of the municipal law. The former kind may be supposed proper for the federal jurisdiction, the latter for that of the states. But it is at least problematical whether an unjust sentence against a *foreigner*, where the subject of controversy was wholly relative to the *lex loci*, would not, if unredressed, be an aggression upon his sovereign, as well as one which violated the stipulations in a treaty or the general laws of nations. And a still greater objection to the distinction would result from the immense difficulty, if not impossibility, of a practical discrimination between the cases of one complection and those of the other. So great a proportion of the cases in which *foreigners* are parties involve national questions, that it is by far most safe and most expedient to refer *all* those in which they are concerned to the national tribunals.

*Id.* at 536 (emphasis added).

We conclude from our review of the historical materials discussed above that sev-

eral reasons exist for determining that the Framers of the Constitution did not contemplate that actions against American citizens who serve as honorary consuls for another country should be within the exclusive jurisdiction of the federal courts. First, Hamilton suggests in The Federalist No. 80 that jurisdiction over consuls exclusive of the states was intended to cover only foreign citizens.

Second, the basis for exercising exclusive federal jurisdiction over consuls, i.e., out of respect for the sovereign the consul represents, is far less compelling when the honorary consul is an American citizen, and the suit involves private actions.[2] Under these circumstances, it is reasonable to assume that a foreign sovereign recognizes, in its appointment of an American citizen as an honorary consul who may also engage in nonconsular employment, that this individual could become involved in private activities which may subject him to litigation. Thus, an action against an American citizen who serves as an honorary consul for another country should have minimal adverse effect on the appointing sovereign.

Finally, the reasons for selecting federal courts over local courts—uniformity of treatment and decision and avoidance of local bias—are not present in private actions against honorary consuls. The necessity of uniformity of treatment and decision is only relevant when the honorary consul's consular actions are challenged in a judicial proceeding. Similarly, because the honorary consul is an American citizen, the problem of local bias is greatly reduced, if not eliminated.

**CONCLUSION**

■ We conclude the use of the terms "consul or vice consul" in 28 U.S.C. § 1351(1) does not encompass an American citizen serving as honorary consul for another country. The terms "consul" and "honorary consul" as used by the international community are not synonymous. The Framers of the Constitution were concerned only with the rights of *foreign* consular representatives when they created the constitutional basis for 28 U.S.C. § 1351(1) in article III, section 2 of the Constitution. Because the district court did not possess subject matter jurisdiction over this matter under 28 U.S.C. § 1351(1), we REVERSE and REMAND to the district court with directions to dismiss the action. Each party shall bear its own costs and fees.

WALLACE, Circuit Judge, concurring:

I concur in all but part B of the majority's persuasive and exhaustively researched opinion. My sole concern regarding part B is that, once we have determined from the statute's plain meaning that the statute does not refer to honorary consuls, examination of the statute's legislative history should be unnecessary. " '[W]hen we find the terms of a statute unambiguous,

2. Under 28 U.S.C. § 1351(1), a consul may be sued in federal court for private actions, *see, e.g., Bors v. Preston,* 111 U.S. 252, 4 S.Ct. 407, 28 L.Ed. 419 (1884) (civil action against consul for tortious conversion of personal property); *Gittings v. Crawford,* 10 F.Cas. 447 (C.C.D.Md.1838) (No. 5,465) (civil action against consul to collect a promissory note); *Davis v. Packard,* 32 U.S. (7 Pet.) 275, 8 L.Ed. 684 (1833) (civil action against consul for action of debt); *Graham v. Stucken,* 10 F.Cas. 945 (C.C.D.N.Y.1857) (No. 5,677) (civil action against consul to set aside a sale of a vessel as void for usury), because federal courts possess exclusive jurisdiction "over suits against consuls without regard to subject matter," *United States v. California,* 328 F.2d 729, 735 (9th Cir.) (footnote omitted), *cert. denied,* 379 U.S. 817, 85 S.Ct. 34, 13 L.Ed.2d 29 (1964), focusing solely on the character of the parties.

The application of § 1351 to cases against a consul involving private actions is consistent with the grant of jurisdiction to federal courts under art. III, section 2 of the United States Constitution. Under art. III, section 2, federal courts are given jurisdiction over both (1) parties, regardless of the subject of the controversy (e.g., "Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party"), and (2) the subject matter, regardless of the character of the parties (e.g., maritime and admiralty cases). *See United States v. California,* 328 F.2d at 732 ("in one class of cases the jurisdiction of the courts of the Union depends 'on the character of the cause, whoever may be the parties,' and, in the other, on the character of the parties, whatever may be the subject of controversy") (quoting *United States v. Texas,* 143 U.S. 621, 643, 12 S.Ct. 488, 492, 36 L.Ed. 285 (1892)) (footnote omitted).

judicial inquiry is complete.'" *Burlington Northern Railroad Co. v. Oklahoma Tax Commission,* — U.S. —, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987), *quoting Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see also Tennessee Valley Authority v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) ("we look first to the statutory language and then to the legislative history *if the statutory language is unclear.*") (emphasis added); *Mobil Sales & Supply Corp. v. Panamax Venus,* 804 F.2d 541, 542 (9th Cir.1986). I believe that, having concluded that the plain meaning of the statute does not refer to honorary consuls, we need go no further.