**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, INC., Plaintiff,**

v.

**IDAHO BANK & TRUST, a foreign corporation, Defendant.**

Civ. No. 87–1364.

United States District Court, D. Idaho.

March 10, 1989.

---

Richard L. Lambe, Margaret Easton Arms, Ulin, Dann & Lambe, Seattle, Wash., M. Michael Sasser, Hamlin & Sasser, P.A., Boise, Idaho, for plaintiff.

Paul Thomas Clark, Douglas L. Mushlitz, Clark and Feeney, Lewiston, Idaho, for defendant.

## OPINION AND ORDER

RYAN, Chief Judge.

### I. FACTS & PROCEDURE

On or about December 1, 1979, plaintiff in the above-entitled case, as surety, and 7–20 Cattle Company (7–20), as principal, executed a livestock dealer's license bond pursuant to the Packers and Stockyard Act (Act), 7 U.S.C. §§ 181, *et seq.* Under the bond, persons selling livestock to 7–20 were essentially assured of payment for all livestock delivered without having to acquire a security interest in either the livestock or proceeds thereof. In 1987, 7–20 purchased livestock from Lewiston Livestock Market (LLM) and Northwestern Livestock Company (NLC). Pursuant to the terms of these cash sales, payment was due from 7–20 upon resale of the livestock. Subsequently, 7–20 sold the livestock and deposited the proceeds with Defendant Idaho Bank & Trust (IB & T) and issued checks to LLM and NLC. Plaintiff alleges that IB & T applied the proceeds deposited in 7–20's account to offset the balance on an existing loan. As a result, the checks issued to NLC and LLM were dishonored by IB & T. Plaintiff asserts that both actions of defendant bank were wrongful. Thereafter, LLM and NLC filed claims against the bond. Plaintiff paid $70,000.00 in satisfaction of these claims. At the same time, LLM, NLC, and the Washington State Department of Agriculture, as trustee, assigned to the plaintiff all claims they had or might have against IB & T.

Plaintiff filed suit in this court on December 28, 1987, alleging a violation of the statutory trust provided for under the Act, and for breach of fiduciary duties owed pursuant thereto. On September 7, 1988, plaintiff filed its motion for summary judgment alleging that 7–20 was a "packer" as defined in Section 191 of the Act; that the provisions of Title 7 created a statutory trust for the benefit of all unpaid cash sellers of livestock; that IB & T violated that trust; that the sale proceeds deposited by 7–20 were within the scope of that trust; that the statutory trust had priority over the Article IX security interest claimed by IB & T; and that plaintiff, as assignee, acquired an interest in the claims of all beneficiaries of the trust. Less than one year later, defendant filed its own cross-motion for summary judgment. Thereafter, plaintiff filed for leave of this court

to file an amended complaint pursuant to Rule 15, Federal Rules of Civil Procedure, to include additional causes of action based upon theories of promissory estoppel and conversion.

The court set the motions down for oral argument on February 15, 1989. The court, after entertaining oral argument, granted plaintiff's motion to amend the complaint from the bench. Thereafter, the court informed the parties that it would treat the cross-motions for summary judgment as cross-motions for partial summary judgment. Following argument and after fully considering the supporting and opposing memoranda submitted along therewith, the court, again ruling from the bench, denied plaintiff's motion for partial summary judgment and granted defendant's cross-motion for partial summary judgment. The court at that time informed the parties that it would provide them with a written opinion and order consistent with its rulings from the bench in due course.

## II. ANALYSIS

■ Plaintiff maintains that 7–20 was a "packer" as defined in Section 191 of the Act, and as such, was obligated to hold all livestock, inventories, receivables and proceeds from the resale of cattle in "trust" for the benefit of any unpaid cash sellers of such livestock until full payment has been received pursuant to Section 196(b). Plaintiff maintains further that under this statutory trust, unpaid cash sellers such as LLM and NLC would have priority over lenders or other persons holding security interests in the livestock or proceeds from the sale of said livestock. Accordingly, plaintiff maintains that any attempt by IB & T to dispose of or exercise control over the proceeds from the resale of such livestock before all unpaid cash sellers had been paid in full would violate the terms of the statutory trust. Plaintiff, although not an "unpaid seller," asserts that as assignee it steps into the shoes of LLM and NLC (the assignors), acquiring any rights they may have in the proceeds.

Section 191 defines a "packer" as:

any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of marketing meats, meat food products, or livestock products in an unmanufactured form....

7 U.S.C.S. § 191 (Law.Co-op.1978). Plaintiff does not contend that 7–20 was a person engaged in the business of buying livestock in commerce for purposes of slaughter, but rather that 7–20 was engaged in the business of buying livestock in commerce for the *ultimate* purpose of slaughter. Plaintiff, however, cites no legislative history in support of such a strained interpretation of Section 191. As to the transactions with LLM and NLC, plaintiff admits that 7–20 operated as a cattle order buyer; that 7–20 in this capacity purchased livestock at auctions and subsequently resold the stock, presumably for a profit; and that 7–20 executed a statutory livestock *dealer's* license bond prior to commencing said livestock purchases. Plaintiff's own pleadings and affidavits in support of summary judgment establish that 7–20 purchased the livestock from LLM and NLC for purposes of *resale*, not for purposes of slaughter. Thus, under plaintiff's version of the facts, 7–20 is more in the nature of a broker or dealer in livestock, not a "packer."

Plaintiff suggests that the courts which have had occasion to interpret Section 191 have tended to construe its terms broadly. Plaintiff, in support of this contention, cites *Safeway Stores, Inc. v. Freeman*, 244 F.Supp. 779 (D.C.1965), *aff'd*, 369 F.2d 952 (D.C.Cir.1966). *Safeway Stores*, however, is not on point.

In *Safeway Stores*, two large grocery stores maintained that they were retailers, not "packers" governed by the Act. The court noted that the issue was not whether the grocery stores were wholesalers or retailers, but rather, whether they performed functions ordinarily carried out by wholesalers. If the grocery store performed functions normally carried out by wholesalers, they would be governed by the Act. The grocery stores in *Safeway Stores*, un-

like 7–20 in the instant case, were extensively involved in the preparation of meat and meat food products for distribution in interstate commerce. The meats were prepared by the stores and later stored at a central warehouse awaiting shipment to the retail outlets. The court, relying on these facts, found that the grocery stores performed functions ordinarily carried out by wholesalers. Thus, the court concluded that the stores were "packers" as defined in Section 191. In so holding, the court refused to apply the definition rigidly, choosing instead to look to the activities performed by the grocery stores.

*Safeway Foods* is clearly distinguishable from the case at bar. Plaintiff does not assert, nor can it assert, that 7–20 performed the functions ordinarily carried out by wholesalers or meat packers. Rather, plaintiff maintains that 7–20 purchased the livestock for the ultimate purpose of slaughter. This argument has already been addressed and rejected by the court above. 7–20 was not involved in the business of manufacturing or preparing meat food products or in the business of marketing meats, meat food products, or livestock products in an unmanufactured form as a wholesale broker, dealer, or distributor in commerce. Accordingly, plaintiff is not a "packer."

 Moreover, it is apparent from the face of the Act itself that Congress did not intend to treat alike all persons engaged in the business of buying livestock. The Act itself distinguishes between those persons operating as "packers" and those persons acting as "dealers." Section 201(d) defines a "dealer" as:

> any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser.

7 U.S.C.S. § 201(d) (Law.Co-op.1978).

The fact that the legislature chose to distinguish between "packer" and "dealers" is, in and of itself, noteworthy. At least one court that has addressed the issue has noted that there is a fundamental difference between one who is engaged in the livestock business in accordance with the statute and a "dealer," i.e., one who speculates in livestock for profit. *Solomon Valley Feedlot, Inc. v. Butz*, 557 F.2d 717 (10th Cir.1977). Thus, the court feels compelled to heed the legislative classification scheme imposed by Congress.

Plaintiff, however, contends that the fact that the statute itself distinguishes between "dealers" and "packers" is not fatal to its motion for summary judgment; it maintains that the Act as remedial legislation is to be liberally construed. Plaintiff, citing *Bowman v. United States Dept. of Agric.*, 363 F.2d 81 (5th Cir.1966), maintains that the Act, as such, should be construed so as to effectuate the purpose(s) of Congress. Assuming this as true, then, whether the court treats 7–20 as a "packer" or a "dealer" in livestock is arguably immaterial, *so long as to do so would effectuate the legislative purpose.*

The purpose behind the Act is clearly spelled out in Section 196(a). Section 196(a) provides in part that the Act is intended to remedy:

> a burden on and obstruction to commerce in livestock caused by financing arrangements under which packers encumber, give lenders security interest in, or place liens on, livestock purchased by *packers* in cash sales, or on inventories of or receivables or proceeds from meat, meat food products, or livestock products therefrom. . . .

7 U.S.C.S. § 196(a) (Law.Co-op.1978) (emphasis added). It is well settled that where the purpose of the statute is clear on its face, it is not necessary to look to its legislative history to discern its meaning and scope. *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1034 (9th Cir.1987), *citing Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978). Section 196 speaks only to "packers" or persons dealing in meat, meat food products, or livestock products therefrom, not "dealers" in livestock. Congress could have easily obligated *all* cash purchasers of livestock (including "dealers") to hold livestock, inventories, receivables and proceeds from the re-

sale of cattle in trust for the benefit of all unpaid cash sellers if it had so intended. As the Ninth Circuit noted in *Foxgord*, "[u]nder the maxim of statutory construction, 'expressio unius est exclusio alterius,' where a statute names the parties who come within its provisions, other unnamed parties are excluded." *Id.* at 1035 (citation omitted). It is not for this court to second-guess the legislature. Neither can the court ignore the statutory distinctions between "dealers" and "packers."[1]

7–20 was admittedly engaged in the business of buying and selling livestock in interstate commerce. Moreover, it was engaged in the business of buying and selling livestock under the authority and protection of a livestock dealer's licensing bond. The facts as admitted by the plaintiff establish that for purposes of the livestock transactions with LLM and NLC, 7–20 was operating as a "dealer," not a "packer." As noted above, the statutory trust provisions apply to "packers," not "dealers."

■ It naturally follows that, absent a statutory trust, 7–20 cannot be held liable for violating the duty 7 U.S.C. § 196(b) puts on packers to hold livestock and proceeds therefrom in trust for their unpaid cash sellers. *See Hedrick v. Bonaccurso & Sons, Inc.,* 466 F.Supp. 1025, 1030 (E.D. Pa.1978).

### III. ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that plaintiff's motion for partial summary judgment should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment should be, and is hereby, GRANTED. Thus, to the extent plaintiff's complaint or amended complaint contains causes of action for violations of a statutory trust cre-

ated pursuant to 7 U.S.C. § 196(b), it is DISMISSED.

---

1. The trust interests created under the Packers and Stockyards Act prevail over competing security interests created under state Uniform Commercial Code, Article IX. *See In re Gotham Provision Co.,* 669 F.2d 1000 (5th Cir.), *cert. denied, First State Bank of Miami v. Gotham Provision Co.,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982); *Hedrick v. Bonaccurso & Sons, Inc.,* 466 F.Supp. 1025, 1030 (E.D.Pa.1978); *In re G & L Packing,* 20 Bankr. 789 (Bankr.N.D. N.Y.1982). The court refuses to disrupt the relative scheme of priorities established under the Act by creating a statutory trust where none was intended.